**INTERNATIONAL LADIES' GARMENT WORKERS' UNION, AFL-CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 16124.**

United States Court of Appeals District of Columbia Circuit.

Argued Sept. 26, 1961.

Decided Jan. 25, 1962.

Mr. George Schatzki, Dallas, Tex., of the bar of the Supreme Court of Texas, pro hac vice, by special leave of court, with whom Messrs. L. N. D. Wells, Jr., Dallas, Tex., and Morris Glushien, New York City, were on the brief, for petitioner. Mr. Laurence J. Cohen, Washington, D. C., also entered an appearance for petitioner.

Miss Rosanna A. Blake, Atty., National Labor Relations Board, with whom Messrs. Stuart Rothman, Gen. Counsel, National Labor Relations Board, Dominick L. Manoli, Associate Gen. Counsel, National Labor Relations Board, and Marcel Mallet-Prevost, Asst. Gen. Counsel, National Labor Relations Board, were on the brief, for respondent.

Before WILBUR K. MILLER, Chief Judge, and BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This is a petition for review of a National Labor Relations Board order which dismissed a complaint by petitioner union. The union charged that Walls Manufacturing Company violated Section 8(a) (1) of the National Labor Relations Act, as amended,[1] by discharging an employee, Mrs. Mary Akey.[2]

The facts are not seriously disputed. In June, 1958, a number of women employees of Walls discussed among themselves the deficiencies of the ladies' restroom at the plant. One employee, Mrs. Le Danois, complained to the production manager. As a result of the employee discussions, Mrs. Akey wrote a letter of complaint on July 2, 1958, to the Texas State Health Department. The letter stated that it was written at the request of several other employees. As a result of the letter, the county health officer got in touch with the employer, who then made a number of sanitary improvements. On January 6, 1959, however, Mrs. Akey again wrote the State Health Department concerning the "sanitary conditions" at Walls. This second letter, according to the testimony, was approved in advance by several other employees. It was forwarded to the city health officer, who visited the plant and concluded that it met the necessary health standards. While inspecting the plant premises, the health officer showed Mrs. Akey's January 6 letter to company officials, who said they suspected that Mrs. Akey had also made the earlier complaint. Two days later, on January 14, 1959, the vice president of the company called Mrs. Akey into his office and in the presence of two other persons told her that she was fired. Mrs. Akey asked the reason for her termination. In response, the vice president told her, according to his testimony, that—

"* * * apparently she wasn't satisfied with our facilities and it didn't look like she was ever going to be and she had written a letter to the Health Department in Austin in which she had made some statements that were certainly not true, and we just couldn't stand for that kind of business at all."

Mrs. Akey admitted that she had written the letter but told the vice president that she had written at the request of others as well as herself. She refused to name the others.

On the basis of these facts, the Examiner found that the writing and sending of the January 6 letter was neither protected nor concerted activity within the meaning of Section 7 of the Act. Because the letter had been approved by two other employees, the Board disagreed and found that Mrs. Akey's conduct con-

---

1. 61 Stat. 140, 29 U.S.C.A. § 158(a) (1). Section 8(a) (1) declares it an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in Section 7 of the Act.

2. A violation of Section 8(a) (3) was also charged, but both the Trial Examiner and the Board concluded that the evidence did not support such an allegation. Petitioner no longer challenges this finding.

stituted concerted activity. It did not reach the question whether the activity was protected.[3] The Board held, however, that—

"In order to sustain a finding of an 8(a) (1) violation based on discharge, it is necessary to establish that at the time of the discharge the employer had knowledge of the concerted nature of the activity for which the employee was discharged."

The Board affirmed the Examiner's finding that when Walls discharged Mrs. Akey it had no reason to believe that she was acting on behalf of others. Consequently, the Board found no Section 8(a) (1) violation.

Petitioner contends in this court that (1) the employer had knowledge of the concerted nature of Mrs. Akey's activities before her discharge was accomplished, and (2) an employer violates Section 8(a) (1) by discharging an employee for concerted activities, even though the employer had no knowledge of the concerted nature of such activities.

■ In the view we take of this case, we need not attempt to give categorical answers to these contentions. We may assume, without deciding, that as a general rule the employer must have prior knowledge of the concerted nature of the activity in order to violate Section 8(a) (1). But even assuming that the rule announced by the Board is generally valid, we think it should not be applied in full strictness and severity to a case like the present, in which the employee's claim of having acted in concert with others is made known to the employer contemporaneously with the discharge, and where the reasonableness and probable soundness of the claim is supported by the background and surrounding cir-

cumstances. Even assuming that before calling in Mrs. Akey for dismissal the employer had no reason to believe that her second letter was written on behalf of a group of employees, it was put on notice of her claim to that effect at the time of the firing episode. The following circumstances appearing of record would tend to show that the claim was valid, or at least worthy of fair consideration: (1) Mrs. Akey was known as a leader among the employees, and at an earlier period had unsuccessfully sought to unionize them; (2) the employer suspected that Mrs. Akey had written the first letter, dated July 2, which on its face represented concerted activity, and to which the second letter was in the nature of a reiteration or follow-up; (3) the employer was told by Mrs. Akey a few seconds after the words of discharge were uttered that she had written the second letter for other employees as well as herself; and (4) nothing in this record indicates that the company's representative took any action toward terminating Mrs. Akey's employment other than to tell her orally of the termination —no one had left the room, and no other operative facts had occurred. Under these circumstances, the employer's good faith, and the fairness and reasonableness of its conduct, became vital issues.[4] We are not attempting to decide those issues one way or the other. But we do not think the Board could properly dispose of the matter by simply concluding —in effect—that all that counted was what the employer knew or should have known before the precise moment when the words of discharge were pronounced.

■ It will thus be seen that we agree with the Board's conclusion that Mrs. Akey's conduct with respect to the second letter was concerted activity, but disagree as to the manner in which the

3. Cf. National Labor Relations Board v. Phoenix Mutual Life Insurance Co., 167 F.2d 983 at 988, 6 A.L.R.2d 408 (7th Cir. 1948) ("[E]mployees shall have the right to engage in concerted activities for their mutual aid or protection even though no union activity be involved, or

collective bargaining be contemplated."); Ohio Oil Co., 92 N.L.R.B. 1597.

4. One pertinent fact is that Mrs. Akey, when asked the names of those in concert with her, declined to answer. But we do not think this conclusively shows that the employer acted in good faith.

Board's general rule as to employer knowledge was applied. One further issue remains, however—whether Mrs. Akey's conduct with respect to that letter was "protected," a matter on which the Board expressly declined to rule. Whether an activity is protected or not depends not only on the wording and purposes of the Act, but on the precise nature and effect of the employee's conduct. The question is accordingly one for the Board to decide in the first instance, and we express no opinion on the subject at the present stage. No doubt, however, the Board will wish to consider whether Mrs. Akey's second letter contained false information, and, if so, whether the falsehoods were such as to remove the writing from any "protected" status it might otherwise possess.

For the foregoing reasons, we will remand the case to the Board for further proceedings not inconsistent with this opinion.

So ordered.

WILBUR K. MILLER, Chief Judge, dissents.