Kenneth P. **PRILL**, Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD**, Respondent.

No. 86–1675.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 9, 1987.

Decided Dec. 31, 1987.

Ellis Boal, Detroit, Mich., for petitioner.

Howard E. Perlstein, N.L.R.B., with whom Robert E. Allen, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Elaine Patrick, N.L.R.B., Washington, D.C., were on the brief, for respondent.

Jordan Rossen, Detroit, Mich., was on the brief, for amicus curiae, Intern. Union, United Automobile Workers, urging reversal.

Before ROBINSON, GINSBURG and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge SILBERMAN.

**1482**

SILBERMAN, Circuit Judge:

Petitioner Kenneth Prill seeks review of a supplemental decision by the National Labor Relations Board ("NLRB" or "Board") finding that Prill's employer, Meyers Industries, Inc. ("Meyers"), did not commit an unfair labor practice when it fired Prill from his job as a truck driver. *Meyers Indus., Inc.*, 281 N.L.R.B. No. 118 (Sept. 30, 1986) (*"Meyers II"*). Prill comes to this court for the second time, having previously petitioned for review after the Board dismissed his identical complaint three years ago in *Meyers Industries, Inc.*, 268 N.L.R.B. 493 (1984) (*"Meyers I"*). *Meyers I* held that Prill's individual actions arising out of his own complaints about the safety of his truck were not "concerted" for the purposes of section 7 of the National Labor Relations Act ("NLRA" or "Act"), which protects the right of employees to "engage in ... concerted activities for [their] ... mutual aid or protection." 29 U.S.C. § 157 (1982). On petition for review of that order, in *Prill v. NLRB*, 755 F.2d 941 (D.C.Cir.1985) (*"Prill I"*), we remanded to the Board for further consideration. Now before us is the Board's second decision, *Meyers II*, in which the Board has adhered to its initial determination in *Meyers I* but modified its reasoning in light of our opinion. Since we conclude that this time the Board's position constitutes a reasonable interpretation of the NLRA to which we must defer, we affirm the Board's decision in *Meyers II*.

**I.**

The facts of this case are not in controversy, and they are fully presented in *Prill I*, 755 F.2d at 943–45. Briefly, they are as follows: Kenneth Prill was, beginning in April 1979, a truck driver for Meyers, a Michigan-based aluminum boat manufacturer. Having had difficulties with the brakes on his company-issued truck, Prill made several complaints to Meyers personnel—to his supervisor, David Faling, to the mechanic and to the company president, Alan Beatty.

In June 1979, another truck driver, Ben Gove, drove Prill's truck on a long trip.

After his return, Gove reported having had brake and steering problems with Prill's truck. While Prill was present in the office, Gove told Faling that he would not drive the truck until the brakes were repaired, and Faling promised to do so.

Later, in early July 1979, Prill was driving his truck through Tennessee and had an accident due in part to the faulty brakes. After unsuccessfully trying to have the state public service commission inspect the damaged tractor and trailer, Prill contacted Beatty, who asked that Prill have the truck towed home to Michigan despite Prill's protestation that it was not safe to move. Beatty requested that Prill chain the tractor and trailer together for moving; Prill refused, asserting that cracks in the areas where the truck and trailer were hitched together would make such an operation unsafe. Instead, Prill had the Tennessee Public Service Commission arrange for an official inspection, which led to a report finding the brakes unsafe and the hitch area damaged. The Tennessee authorities then issued a citation prohibiting the moving of the truck. Two days later, Prill was fired because, in the words of a Meyers officer, "we can't have you calling the cops like this all the time." *Prill I*, 755 F.2d at 945 (footnote omitted).

In *Prill I*, we held that the Board's new, more narrow interpretation of concerted activity in section 7 was not, contrary to the Board's suggestion in *Meyers I*, compelled by the NLRA. 755 F.2d at 942. The Board's misreading of the law led us to remand the case for a supplemental decision by the NLRB; we directed the Board to rely on its own expertise in labor relations rather than on a simplistic reading of the NLRA. Because we remanded on this basis, we did not reach in *Prill I* two issues now before us: Is the new *Meyers* standard a reasonable interpretation of the NLRA; and if so, was it properly applied to the petitioner in this particular case?

**II.**

In *Meyers II*, the NLRB adheres to its legal position in *Meyers I*, in which it held that an employee's action may be con-

certed for the purposes of the NLRA only if the action is "engaged in with or on the authority of other employees, and not solely by and on behalf of the employee himself." *Meyers I,* 268 N.L.R.B. at 497 (footnote omitted). Section 7 of the NLRA provides that "[e]mployees shall have the right to self-organization ... to bargain collectively ... and to engage in other *concerted activities* for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157 (1982) (emphasis added). At the heart of this dispute is whether the safety complaints of a single employee acting on his own can constitute concerted activity protected under the Act. Previously, under *Alleluia Cushion Co.,* 221 N.L.R.B. 999 (1975), and its progeny, the efforts of a single worker to invoke state and federal laws regulating occupational safety were held protected activity under section 7. *See Prill I,* 755 F.2d at 945. The Board had determined that such complaints were "concerted" on the theory that the action of one individual bringing statutory safety concerns to light is presumed to assert the rights of all employees interested in safety. *Alleluia,* 221 N.L.R.B. at 1000. Put simply, the Board now rejects the theory animating *Alleluia* and its progeny. A worker no longer takes "concerted" action by himself unless he acts on the authority of his fellow workers. Unlike the Board's reasoning in *Alleluia,* the Board's new position is that the "concerted activity" prong and the "mutual benefit or protection" prong of section 7 are two distinct factual inquiries that are to be analyzed separately. Concerted action cannot be imputed from the object of the action. In other words, if a worker takes action by himself without contacting his fellow employees, even though he has a desire to help all workers, not just himself, he will not have satisfied the concerted action requirement. As under the old standard, however, a worker is still deemed to have taken concerted action when he acts with the actual participation or on the authority of his co-

workers. *Meyers II,* 281 N.L.R.B. No. 118 at 12–16.

Before we reach the question left open in *Prill I* and reasserted by the petitioner—whether the *Meyers* standard is inconsistent with the NLRA—we ask whether the Board has cured those defects identified in *Prill I.* As we noted, the Board in *Meyers I* suggested that its new position was actually mandated by the NLRA, and this we concluded was a misreading of the law. *Prill I,* 755 F.2d at 950. In contrast to its previous position, the NLRB in *Meyers II* made a determination that the *Meyers I* interpretation of what is concerted is not actually required by the NLRA but rather is "most responsive to the central purposes for which the Act was created." *Meyers II,* at 4. The Board further contends that its new position, though not required, "proceeds logically" from its analysis of the legislative history. *Id.* at 7. Although now recognizing that the statute could be read to support either the *Alleluia* or *Meyers* interpretation of concerted activity, the Board concludes that *Meyers* is the better interpretation, drawing both upon its reading of the statute and its expertise in administering the statute.

The Board also explained why it does not believe that there would be a chilling effect on other workers if Prill were not reinstated. In *NLRB v. City Disposal Systems, Inc.,* 465 U.S. 822, 104 S.Ct. 1505, 79 L.Ed. 2d 839 (1984), the Supreme Court reasoned that there could be a violation of section 8(a)(1)[1] of the NLRA, which protects an employee from interference with his rights under section 7, where a company fired an employee whose actions were so related to other employees' concerted activities that the firing would interfere with or restrain those other concerted activities. *City Disposal,* 465 U.S. at 833 n. 10, 104 S.Ct. at 1512 n. 10. The Board found no such relationship between Prill's discharge and his fellow employees' concerted activities, and the record does not indicate otherwise.

---

1. Section 8(a)(1) provides in full:
   It shall be an unfair labor practice for an employee—

(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section [7] of this title.
29 U.S.C. § 158(a)(1) (1982).

1484

Finally, the Board responds to our concerns expressed in *Prill I* regarding the scope of individual activity that would qualify as concerted. *Compare Prill I*, 755 F.2d at 953–56 *with Meyers II*, at 11–16. The Board has clarified how its new standard comports with previous decisions in the courts of appeals and prior Board decisions. For example, the Board answers our question whether *Meyers II* is consistent with cases like *Mushroom Transportation Co. v. NLRB*, 330 F.2d 683 (3d Cir. 1964). In that case, the court reasoned that mere talk is sufficient to put a worker in concert with his fellow employees as long as the conversation is taken before the worker acts and contemplates group action. *Id.* at 685. The Board harmonizes its new standard with the Third Circuit's decision in *Mushroom Transportation* by emphasizing its intent to protect "individual employees [who] seek to initiate or to induce or to prepare for group action" and "individual employees bringing truly group complaints to the attention of management." *Meyers II*, at 15. We accept the Board's explanation that *Meyers II* adopts the reasoning of *Mushroom Transportation.* Moreover, we are satisfied that the Board has not repeated its past error by suggesting that its new definition of concerted action is merely a return to " 'the standard on which the Board and courts relied before *Alleluia.*' " *Prill I*, 755 F.2d at 953 (quoting *Meyers I*, 268 N.L.R.B. at 496). The Board has explained its position in light of these cases, and, without endorsing each interpretation, we find the discussion a helpful explication of the new standard.

Having concluded that *Meyers II* is fully responsive to our previous opinion, we address petitioner's argument that the Board's interpretation of section 7 is inconsistent with the NLRA. We do not think it is. The Supreme Court has determined that nothing in the legislative history of section 7 "specifically expresses the understanding of Congress in enacting the 'con-

certed activities' language." *City Disposal*, 465 U.S. at 834, 104 S.Ct. at 1512. It is clear that "Congress sought generally to equalize the bargaining power of the employee with that of his employer *by allowing employees to band together in confronting an employer* regarding the terms and conditions of their employment." *Id.* at 835 (emphasis added). By requiring that workers actually band together, the NLRB has adopted a reasonable—but by no means the only reasonable—interpretation of section 7. The Board reads the words "concerted activity" to "encompass[ ] [only] those circumstances where individual employees seek to initiate or to induce or to prepare for group action, as well as individual employees bringing truly group complaints to the attention of management." *Meyers II*, at 15. We believe this position is consistent with the history of the Act.[2]

Petitioner argues that, in light of *City Disposal, Meyers II* is unreasonable in requiring a direct link between the actions of an individual employee and the actions or approval of his co-workers before the individual's actions will be considered "concerted." In *City Disposal*, the Court upheld the *Interboro* doctrine, in which the Board finds an employee's activities concerted where the employee asserts rights under a collective bargaining agreement whether on his own or in actual concert with others. *City Disposal*, 465 U.S. at 830–32, 104 S.Ct. at 1510–11. The rationale for the Court's decision was that "when an employee invokes a right grounded in the collective-bargaining agreement, he does not stand alone." *Id.* at 832, 104 S.Ct. at 1511. The Supreme Court simply recognized that a worker's actions are concerted when tied to the actions of his fellow employees, and in *City Disposal*, the collective bargaining agreement itself provided the bond between one worker and another. *Id.* at 830–37, 104 S.Ct. at 1510–14. *City Disposal* neither required nor precluded treating workplace-related statutory rights as es-

2. The source of the section 7 "concerted activities" language is the Norris–La Guardia Act, which declared that "the individual ... worker ... shall be free from the interference, restraint, or coercion, of employers ... in self-organiza- tion or in other concerted activities for the purposes of collective bargaining or other mutual aid or protection." 29 U.S.C. § 102 (1982), *quoted in City Disposal*, 465 U.S. at 834–35, 104 S.Ct. at 1513.

tablishing, without more, the necessary bond among workers. In *Meyers II*, the Board distinguished contractual rights under collective bargaining agreements from workplace-related statutory rights, holding that the former, but not the latter, demonstrated the requisite bond. The *Meyers II* rejection of the broader (*Alleluia*) interpretation, we conclude, is not inconsistent with the *Interboro* doctrine upheld in *City Disposal,* nor is it otherwise unreasonable. We therefore defer to the Board in accordance with *Chevron U.S.A. Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 864, 104 S.Ct. 2778, 2792, 81 L.Ed.2d 694 (1984).

▮ Prill claims that even if *Meyers II* is a reasonable standard, it was not applied correctly. Based on our review of the record, we conclude that there was substantial evidence to support the Board's finding that Prill acted on his own, without inducing or preparing for group action. We agree with the Board that Prill's actions were not in concert with Gove or others: "Prill merely overheard Gove's complaint while in the office on another matter, and there is no evidence that anything else occurred." *Meyers I,* at 498. Despite the fact that there might be a benefit to Prill's fellow employees from his actions, Prill acted alone when he complained to his employer and the Tennessee state officials, and when he refused to tow the unsafe truck. Had Prill simply gotten together with his co-workers to complain about the violation of statutory safety provisions, he would have been protected from dismissal under the Board's current reading of section 7, which requires that both the "mutual aid or protection" *and* the "concerted activity" prongs be satisfied. Recognizing the singularity of Prill's case, we affirm the Board's decision for the reasons stated, and as adequately supported by substantial evidence in the record. *See International Ladies Garment Workers v. NLRB,* 463 F.2d 907, 919 (D.C.Cir.1972).

Since the Board's interpretation of "concerted activity" is reasonable, its judgment is hereby,

*Affirmed.*