[No. F042980. Fifth Dist. Aug. 11, 2004.]

MICHAEL HANEY, Plaintiff and Appellant, v.
ARAMARK UNIFORM SERVICES, INC., Defendant and Respondent.

COUNSEL

Law Offices of Wagner & Jones, Andrew B. Jones and Nicholas J. P. Wagner for Plaintiff and Appellant.

Littler Mendelson, Bren K. Thomas and Allen A. Palacio for Defendant and Respondent.

OPINION

**DAWSON, J.**—In this appeal, a former employee alleges he was discharged because he complained about fraudulent billing practices and refused to implement those practices and, thus, his discharge violated public policy. The employer obtained summary adjudication of the wrongful discharge claim on the ground that it was preempted by federal labor statutes because (1) the employee engaged in arguably protected concerted activity and (2) the claim could not be decided independent of the just cause termination provisions contained in the applicable collective bargaining agreement.

We hold that the trial court erred in granting summary adjudication because (1) the employer's separate statement of undisputed facts did not set forth facts and reference evidence that demonstrated that the employee's individual acts were linked with actual group action and, accordingly, that the employee engaged in arguably concerted activity for purposes of the federal statute, and (2) resolution of the wrongful discharge claim is not dependent upon an interpretation of the collective bargaining agreement. In addition, we hold that the public policy of discouraging fraud constitutes a fundamental public policy of California and is sufficient to support the employee's wrongful discharge claim.

Accordingly, the judgment is reversed and the case is remanded.

### FACTS AND PROCEEDINGS

Respondent Aramark Uniform Services, Inc. (Aramark) is engaged in the business of providing rental services to its customers, including rental of towels, mats, uniforms and garments, such as pants, shirts, and coveralls.

Appellant Michael Haney was employed as a route sales representative by Aramark from March 1991 until January 6, 1999.

During the time Aramark employed Haney, Aramark was a party to a collective bargaining agreement with General Teamsters Union Local No. 431 (Local 431). Article 17 of that agreement between Aramark and Local 431 addresses termination of employment. Section 2(a) of that article states: "The Employer shall not discharge or suspend any employee, other than a probationary employee without just cause, except that no warning letter suspension or other prior disciplinary action need be given to an employee before he is discharged if the cause of such discharge is dishonesty or being under the influence of intoxicating liquor or dangerous drugs on the job; failure to report for work as instructed by the Employer; reckless driving while on duty resulting in a traffic citation and conviction; gross insubordination; carrying unauthorized passengers."

Haney alleges that Aramark used a number of techniques that resulted in its customers paying for products or services that they did not receive and that these billing practices were fraudulent. Haney also alleges that he reported these matters to various members of Aramark's management. One type of fraudulent business practice Haney claims Aramark utilized related to so-called "one-way items" such as bathroom soap, paper towels, air fresheners, and toilet paper. Haney contends Aramark management personnel expressly instructed the route sales representatives, including himself, to charge its customers for one-way items they did not require or receive and bring unused items back to the plant and place them in a "clean return cart" so those items could be resold. Haney further contends that Aramark management personnel instructed the route sales representatives not to inform Aramark's customers that they would be charged for one-way items that they did not require or receive.

Conversely, Aramark contends that its practices were proper, but that Haney engaged in improper billing of the customers on his route in order to boost his commissions.

Haney was fired on January 6, 1999. A disciplinary notice provided to Haney stated he was being terminated for overcharging, not reducing inventory when requested by the customer, adding new merchandise without authorization from the customer, and not verifying inventory and lost garments with the customer. The notice also stated that Haney's action placed Aramark's account with Eagle Mountain Casino in jeopardy.

Two days later, Local 431 notified Aramark by letter that it intended to file a grievance on behalf of Haney. Aramark asserts that the grievance ended in a

deadlock. An attorney for Local 431 subsequently notified Aramark by letter dated February 19, 1999, that Local 431 wished to proceed with arbitration in connection with the termination of Haney. Arbitration was not completed.

On April 30, 1999, Haney filed a complaint against Aramark, which contained three causes of action. The only cause of action relevant to this appeal is the second, which alleged that Haney was terminated because (1) he complained to management about Aramark's practice of overcharging and defrauding customers, and (2) he refused to follow Aramark's practice of defrauding customers. Haney further alleged that he "was terminated by [Aramark] without any justifiable cause or reason and in violation of public policy and in violation of [Aramark's] own policies and procedures."

Aramark filed a motion for summary adjudication asserting that the second cause of action failed as a matter of law because it was preempted by federal labor statutes and did not assert an appropriate public policy to support the claim. The superior court agreed that federal labor statutes preempted Haney's cause of action for wrongful discharge in violation of public policy and granted summary adjudication as to that claim.

Subsequently, the parties settled the first and third causes of action and a request for dismissal was filed. Haney then filed a notice of appeal from the order granting the motion for summary adjudication as to the second cause of action.

## DISCUSSION

### I. *Standard of Review for Summary Adjudication*

█ When reviewing the grant of a motion for summary judgment or summary adjudication,[1] we independently consider whether a triable issue of material fact exists and whether the moving party is entitled to summary judgment or adjudication as a matter of law. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476 [110 Cal.Rptr.2d 370, 28 P.3d 116].) In reassessing the merits of the motion, we "consider only the facts properly before the trial court at the time it ruled on the motion. [Citation.]" (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1601 [50 Cal.Rptr.2d 431].)

█ To obtain summary judgment or summary adjudication of an issue, a moving party must comply with Code of Civil Procedure section 437c

---

[1] "A summary adjudication motion is subject to the same rules and procedures as a summary judgment motion. Both are reviewed de novo. [Citations.]" (*Lunardi v. Great-West Life Assurance Co.* (1995) 37 Cal.App.4th 807, 819 [44 Cal.Rptr.2d 56].)

(section 437c). This court has acknowledged that section 437c is a complicated, unforgiving statute with little flexibility and "myriad requirements." (*Brantley v. Pisaro, supra*, 42 Cal.App.4th at p. 1607.)

One of the more basic requirements is that the papers supporting a section 437c motion "*shall* include a separate statement setting forth plainly and concisely *all material facts* which the moving party contends are undisputed." (*Id.*, subd. (b)(1), italics added; see Cal. Rules of Court, rule 342(d).) In addition, each material fact set forth in the separate statement "shall be followed· by a reference to the supporting evidence." (§ 437c, subd. (b)(1).) "Citation to the evidence in support of each material fact must include reference to the exhibit, title, page, and line numbers." (Cal. Rules of Court, rule 342(d).)

As a reviewing court, we are often asked to determine whether a section 437c motion has complied with the statute. This decision is yet another object lesson for practitioners in the importance of (1) accurately identifying the facts material to the moving party's legal theory and (2) referencing evidence in the separate statement that establishes, either directly or by inference, the material fact that the moving party asserts is undisputed. (See generally Zebrowski, *The Summary Adjudication Pyramid* (Nov. 1989) 12 L.A. Law. 28.)

## II. *Preemption of State Law Claims*

The National Labor Relations Act (NLRA) (29 U.S.C. § 151 et seq.) governs labor-management relations in the private sector, and claims brought under that act are within the primary jurisdiction of the National Labor Relations Board (NLRB). Section 301 of the Labor Management Relations Act of 1947 (LMRA) (29 U.S.C. § 185) makes private sector collective bargaining agreements (CBA's) enforceable in federal court. Both of these statutes preempt certain types of state law claims for retaliatory or wrongful discharge of employees.

### A. *Preemption Under the NLRA*

The strand of federal preemption under the NLRA relevant to this case was announced by the United States Supreme Court in *San Diego Unions v. Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773] (*Garmon*). Under the *Garmon* test, state law claims are preempted if they concern conduct that is "arguably" protected by section 7 or "arguably"

prohibited by section 8 of the NLRA. (*Garmon, supra*, at p. 245.)[2] The United States Supreme Court stated: "Since the [NLRB] has not adjudicated the status of the conduct for which the State of California seeks to give a remedy in damages, and since such activity is arguably within the compass of § 7 or § 8 of the [NLRA], the State's jurisdiction is displaced." (*Garmon,* at p. 246.)

■ The scope of preemption based on conduct that is arguably protected by the NLRA does not extend to state law claims where the activity regulated (1) is a "merely peripheral concern" of the NLRA (*Garmon, supra,* 359 U.S. at p. 243) or (2) "touches on interests so deeply rooted in local feeling and responsibility that, in the absence of compelling congressional direction, it could not be inferred that Congress intended to deprive the State of the power to act." (*Operating Engineers v. Jones* (1983) 460 U.S. 669, 676 [75 L.Ed.2d 368, 103 S.Ct. 1453]; *Garmon, supra,* at p. 244.)[3]

In addition, the United States Supreme Court has refined its preemption analysis under the "arguably prohibited" branch of the *Garmon* preemption test and held that "[t]he critical inquiry . . . is not whether the State is enforcing a law relating specifically to labor relations or one of general application but whether the controversy presented to the state court is identical to . . . or different from . . . that which could have been, but was not, presented to the [NLRB]. For it is only in the former situation that a state court's exercise of jurisdiction necessarily involves a risk of interference with the unfair labor practice jurisdiction of the [NLRB] which the arguably prohibited branch of the *Garmon* doctrine was designed to avoid." (*Sears, Roebuck & Co. v. Carpenters* (1978) 436 U.S. 180, 197 [56 L.Ed.2d 209, 98 S.Ct. 1745] (*Sears*).)

■ The United States Supreme Court has addressed what "arguable" means in the context of questions of law and questions of fact. As to questions of law, the party asserting preemption must advance a statutory construction of the NLRA "that is not plainly contrary to its language and that has not been 'authoritatively rejected' by the courts or the [NLRB]. [Citation.]"

---

[2] A second strand of federal preemption, which is not relevant to this appeal, prohibits state interference with conduct that Congress intended to be left unregulated, even if not protected or prohibited by the NLRA. (See *Machinists v. Wisconsin Emp. Rel. Comm'n* (1976) 427 U.S. 132, 149–151 [49 L.Ed.2d 396, 96 S.Ct. 2548].)

[3] For example, workers' claims for wrongful discharge in retaliation for complaining about unsafe work conditions are not preempted by the NLRA. (E.g., *Paige v. Henry J. Kaiser Co.* (9th Cir. 1987) 826 F.2d 857 [two workers discharged after complaining about Cal-OSHA safety violations; no preemption]; *Inter-Modal Rail Employees Assn. v. Burlington Northern & Santa Fe Ry. Co.* (1999) 73 Cal.App.4th 918 [87 Cal.Rptr.2d 60] [en masse termination of employees who formed association to complain about unsafe working conditions; no preemption regardless of actual concerted activity because of importance of state interest in providing safe workplace].)

(*Longshoremen v. Davis* (1986) 476 U.S. 380, 395 [90 L.Ed.2d 389, 106 S.Ct. 1904].) As to questions of fact, the "party must then put forth enough evidence to enable the court to find that the [NLRB] reasonably could uphold a claim based on such an interpretation." (*Ibid.*)

Here we will conclude that Aramark's showing on motion for summary adjudication relied on a statutory construction that has been rejected by both the courts and the NLRB. Thus, in the parlance of summary judgment and summary adjudication, Aramark failed to show a fact—arguably concerted activity—material to its defense.

### 1. *Objective Standard for Concerted Activity*

█ Section 7 of the NLRA provides that "[e]mployees shall have the right to . . . engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . ." (29 U.S.C. § 157.) In applying this provision, the NLRB takes the position that the "concerted activity" prong and the "mutual aid or protection" prong are factually distinct prongs in a two-step analysis that must be evaluated separately. (*Prill v. N.L.R.B.* (D.C. Cir. 1987) 266 U.S.App.D.C. 385 [835 F.2d 1481, 1483] (*Prill*).) Here we focus on the first step in the analysis—that is, whether Haney engaged in "concerted activity."

The parties disagree over the appropriate legal standard for defining "concerted activity" when the relevant acts were performed by a single employee.[4] The superior court, relying on *Ewing v. N.L.R.B.* (2d Cir. 1988) 861 F.2d 353 and cases decided before *Prill*, held that there was "some linkage" between Haney's acts and group action because Haney informally complained about the alleged overcharging on behalf of himself and the other route sales representatives.

█ In the mid-1980's, the NLRB changed its standard for determining when the acts of a single employee constitute concerted activity. Specifically, the

---

[4] Aramark did not assert facts in its separate statement attempting to show that one or more coworkers also had complained to management or refused to do certain acts or that Haney's complaints and refusals were part of that group conduct. Instead, Aramark's motion addressed Haney's acts as the conduct of a single employee taken for the benefit of himself and others. The question of when the conduct of an individual amounts to concerted activity within the meaning of section 7 of the NLRA has been addressed often. (E.g., Annot., Spontaneous or Informal Activities of Employees as "Concerted Activities," Within Meaning of § 7 of National Labor Relations Act (29 U.S.C. § 157) (1992) 107 A.L.R.Fed. 244, 261–284 [§§ 9–17 address activity of a single employee not involving CBA]; 48 Am.Jur.2d (1994) Labor and Labor Relations, §§ 1821–1824, pp. 1004–1006; see Sharpe, *"By Any Means Necessary" —Unprotected Conduct and Decisional Discretion Under the National Labor Relations Act* (1999) 20 Berkeley J. Emp. & Lab. L. 203.)

NLRB "replaced the presumption that individual action for 'mutual aid or protection' was 'concerted' within the meaning of § 7 of the [NLRA] with an objective test requiring some linkage to group action before finding an act 'concerted.' " (*Ewing v. N.L.R.B., supra*, 861 F.2d at p. 355.)

The requirement for some linkage or nexus between the acts of the individual employee and a group is met in at least three distinct factual situations. First, when an individual's act stems from prior concerted activity. (*Ewing v. N.L.R.B., supra*, 861 F.2d at p. 361.)[5] Second, "if an individual acts, formally or informally, on behalf of a group." (*Ewing*, at p. 361.) Third, if an individual attempts to bring about or prepare for group action, even if those attempts are unsuccessful in achieving group action. (*Ibid.*)

 This appeal involves the second situation[6] and raises the question whether Aramark's separate statement was sufficient to show that Haney arguably acted on behalf of a group. According to the NLRB, individual action is on behalf of a group and therefore concerted if "engaged in with or on the authority of other employees." (*Meyers Industries, Inc.* (1984) 268 N.L.R.B. 493, 497.) We adopt this standard for concerted activity[7] because (1) the federal courts have determined that the NLRB's statutory construction of section 7 of the NLRA is reasonable (e.g., *Ewing v. N.L.R.B., supra*, 861 F.2d at p. 362; *Prill, supra*, 835 F.2d at p. 1485) and (2) we, like the federal courts, defer to the statutory construction adopted by the agency responsible for enforcing the legislation (*Prill, supra*, at p. 1485).

The impact of the NLRB's change to a standard that focuses on the authority given to the individual employee by his or her coworkers was explained by the District of Columbia Circuit Court of Appeals as follows: "Concerted action cannot be imputed from the object of the action. In other words, if a worker takes action by himself without contacting his fellow employees, even though he has a desire to help all workers, not just himself, he will not have satisfied the concerted action requirement. As under the old standard, however, a worker is still deemed to have taken concerted action

---

[5] For example, a single employee's invocation of rights set forth in a CBA is presumed to be concerted activity because the CBA was put into effect by group action. (*NLRB v. City Disposal Systems, Inc.* (1984) 465 U.S. 822, 833 [79 L.Ed.2d 839, 104 S.Ct. 1505].)

[6] Aramark's separate statement did not identify any prior group action or prior concerted activity that could be associated with Haney's complaints and refusal, and did not attempt to show that Haney made the complaints and refusals in preparation for group action. Thus, Aramark did not attempt to show that Haney engaged in arguably concerted activity under either the first or third situations above described.

[7] We reject Aramark's contention that the four-element test for concerted activity set forth in *Shelly & Anderson Furniture Mfg. Co., Inc. v. N.L.R.B.* (9th Cir. 1974) 497 F.2d 1200, 1202–1203, is applicable because that test predates the NLRB's change of the standard of determining when the acts of a single employee constitute concerted activity.

when he acts with the actual participation or on the authority of his co-workers. [Citation.]" (*Prill, supra*, 835 F.2d at p. 1483.)

The Sixth Circuit Court of Appeals has analyzed and applied this standard for identifying concerted activity based on the acts of one employee. (*Manimark Corp. v. N.L.R.B.* (6th Cir. 1993) 7 F.3d 547, 549–552.) In that case, a route driver for a vending machine company met with the general manager at the general manager's request to discuss a change in the way the driver's commissions would be calculated. During that meeting, the driver told the general manager "that he and other drivers had complaints about inadequate maintenance of the trucks they drove, poor communication with supervisors, and the late arrival of the Hostess supplier." (*Id.* at p. 549.) The manager requested the driver to set up a meeting with the other drivers to discuss these complaints, but the driver never did. The court rejected the NLRB's determination that the driver engaged in concerted activity and stated: "An inquiry into the concerted nature of conduct should not focus solely upon the group nature of the complaints. Instead, it also should air what the employees decided to do about those complaints. Here, while there was evidence that drivers were irritated by working conditions, *there is nothing to indicate that they had decided to act upon those annoyances.* Nor is there any evidence that Fields was acting in anyone's interest but his own on January 4. Accordingly, the Board's finding that Fields' January 4 complaints were concerted activity is not supported by substantial evidence on the record considered as a whole." (*Id.* at p. 551, italics added.)

In contrast, a situation where employees actually decided to do something about shared concerns occurred where a letter of complaint written by a single employee was approved in advance by several other employees. (See *International Ladies' Garment Workers' U. v. N.L.R.B.* (D.C. Cir. 1962) 112 U.S.App.D.C. 30 [299 F.2d 114].)

■ In summary, Aramark has presented a statutory construction of the phrase "concerted activities" that has been authoritatively rejected by the NLRB. Consequently, Aramark's statutory construction does not present an "arguable" legal position for purposes of the *Garmon* preemption test. (See *Longshoremen v. Davis, supra*, 476 U.S. at p. 395.)

### 2. *Application of the Standard to Aramark's Separate Statement*

Aramark made no attempt in its separate statement to show that one or more employees *explicitly* authorized Haney to complain about the alleged overcharging of customers. Consequently, the critical inquiry is whether the separate statement sets forth facts which, arguably, show that another employee of Aramark, through words or conduct, *impliedly* authorized Haney to act on his or her behalf.

Aramark's separate statement sets forth no words or conduct of another employee from which implied authorization for Haney to act on that employee's behalf can be inferred. Nor does the separate statement contain an assertion that any employee impliedly authorized Haney to act on his or her behalf. Instead, Aramark's separate statement includes quotations from Haney's deposition in which he answered "yes" when asked (1) if he felt he was voicing the complaints of other drivers, (2) if he complained on behalf of himself and his coemployees, and (3) if he felt he was being retaliated against for standing up for himself and the other drivers.

In his declaration opposing summary adjudication, Haney explained the foregoing testimony by stating: "[W]hen I said I felt that I was voicing the complaints of the other drivers, I was speculating that other drivers would voice the same complaints if they were asked." Haney also stated that no employees asked him to speak on their behalf, no employees gave him authority to speak on their behalf, and he never asked for such authority.

Aramark contends Haney's explanation of his deposition testimony fails to create a triable issue of fact because the explanation impermissibly contradicts his prior deposition testimony. (See, e.g., *Jacobs v. Fire Ins. Exchange* (1995) 36 Cal.App.4th 1258, 1270 [42 Cal.Rptr.2d 906] [court may disregard declaration prepared for purposes of opposing summary judgment motion that conflicts with declarant's deposition testimony].) An objective review of Haney's declaration, however, reveals that he explained, rather than contradicted, his deposition testimony that he complained on behalf of himself and his coemployees. Specifically, Haney's explanation negates the inference that other employees actually authorized him to complain on their behalf. Merely contradicting the *inferences* that Aramark wishes to draw from the deposition testimony is distinguishable from changing one's story.

Aramark also asserted below that Haney's statement that he did not ask for and was not given authority to speak on behalf of any other employee was irrelevant. Aramark argued that "[i]t is not necessary for employees tell [*sic*] [Haney] to speak on their behalf in order to show that he actually spoke on their behalf and that his actions were 'concerted' and therefore preempted. [Citations]." Aramark's view of relevancy is flawed because it is based on the wrong standard for concerted action. As discussed in part II.A.1., *ante*, the authority to raise complaints with management on behalf of other employees is essential in this case, and that authority may be expressed or implied. Therefore, Haney's statements that no employees asked him to speak on their behalf and that no employees gave him authority to speak on their behalf are relevant to whether another employee expressly authorized Haney to act on that employee's behalf.

Moreover, by focusing on Haney's feelings and motivation for raising the complaints, Aramark overlooked the need to include in its separate statement facts sufficient to uphold a determination that (1) a coworker expressly authorized Haney to act on that coworker's behalf, (2) a coworker implicitly authorized Haney, by words or conduct, to act on his or her behalf, or (3) Haney's actions were a subset of actions by a group. This shortcoming probably arose because Aramark relied on the old standard for concerted activity or on its conclusory assertion that Haney acted on behalf of other employees (Aramark's separate statement, ¶ 23) without considering the need to include facts regarding actual authorization or actual group action.

At most, Aramark has shown a group nature to the complaints and that Haney's purpose or objective was to benefit himself as well as his coworkers. This showing is legally insufficient because concerted action cannot be imputed from either the object of the individual's action or the group nature of the complaints.

First, the purpose of a single employee is not relevant—or even arguably relevant—to the concerted activity prong. (*Prill, supra*, 835 F.2d at p. 1483.) Rather, purpose is related to the "mutual aid and protection" prong,[8] and the analysis of that prong cannot be collapsed with the analysis of the concerted activity prong so that an individual's desire to protect others creates the inference that his or her action was concerted. (See *Ewing v. N.L.R.B., supra*, 861 F.2d at pp. 358–359.)

Second, the group nature of the complaints made by Haney, even when combined with his individual motivation, is not a sufficient basis for inferring that one or more coworkers impliedly authorized Haney to act on their behalf because, among other things, the separate statement does not attempt to show that one or more coworkers sought to band together with Haney or that Haney "sought to band together with at least one other employee in pursuit of a common goal." (*N.L.R.B. v. Portland Airport Limousine Co., Inc.* (1st Cir. 1998) 163 F.3d 662, 667.)

Accordingly, Aramark's motion for summary adjudication is legally inadequate. Actual authorization, express or implied, or actual group action should have been addressed, not merely the fiction that group action occurred based on Haney's motivation.

In summary, Aramark has failed to set forth facts and to reference evidence showing that, under the well-established legal test for "concerted"

---

[8] The text of section 7 of the NLRA shows that purpose is related to "mutual aid or protection." (29 U.S.C. § 157.)

activity by a single employee, the NLRB could reasonably uphold a claim that Haney's acts arguably are protected. (See *Longshoremen v. Davis, supra,* 476 U.S. at p. 398 [union failed to put forth evidence to show plaintiff was arguably an employee and not a supervisor].) Consequently, Aramark has failed to establish that the conduct alleged in Haney's second cause of action is arguably protected under section 7 of the NLRA and that preemption should apply to that cause of action.[9] (See *Brantley v. Pisaro, supra,* 42 Cal.App.4th at p. 1602 [discussing moving party's burden under § 437c].)

### B. *Preemption Under Section 301 of the LMRA*

Section 301 of the LMRA, which makes CBA's enforceable in federal court, provides in part: "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." (29 U.S.C. § 185(a).)

The preemptive scope of this provision has been construed broadly by the United States Supreme Court. Specifically, a state law claim is preempted if its resolution is "substantially dependent" on analysis of a CBA. (*Allis-Chalmers Corp. v. Lueck* (1985) 471 U.S. 202, 220 [85 L.Ed.2d 206, 105 S.Ct. 1904]; see *Department of Fair Employment & Housing v. Verizon California, Inc.* (2003) 108 Cal.App.4th 160, 164–169 [133 Cal.Rptr.2d 258].) In contrast, if resolution of the state law claim does not require construing the CBA, the state law remedy is independent of the CBA for purposes of preemption under section 301 of the LMRA. (*Lingle v. Norge Division of Magic Chef, Inc.* (1988) 486 U.S. 399, 408 [100 L.Ed.2d 410, 108 S.Ct. 1877] (*Lingle*).)

In *Lingle*, an employee filed a state law tort claim alleging her employer fired her in retaliation for filing a workers' compensation claim. The Seventh Circuit Court of Appeals had ruled that the retaliatory discharge claim was preempted because the facts underlying that claim were the same as those applicable to a grievance under the just cause provision of the CBA. The United States Supreme Court reversed, holding that an application of state law was preempted by section 301 of the LMRA only if such application required the interpretation of the CBA. (*Lingle, supra,* 486 U.S. at p. 413.) "In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require

---

[9] We do not reach the questions whether the "peripheral concern" or "deeply rooted in local law" exceptions to *Garmon* preemption are applicable in this case, or whether the *Sears* "identical controversy" exception to preemption is applicable.

addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes." (*Id.* at pp. 409–410.)

In closing, the Supreme Court observed that "[i]n the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge claim without interpreting the 'just cause' language of a collective-bargaining agreement." (*Lingle, supra,* 486 U.S. at p. 413.)[10] In light of this observation, we now turn to Aramark's arguments for why this is not "the typical case" of retaliatory discharge that can be resolved without interpreting the just cause provision of the CBA.

Aramark argues Haney's second cause of action requires an interpretation of the "just cause" provision of the CBA because paragraph 20 of his complaint alleges that he was terminated by Aramark "without any justifiable cause or reason and in violation of public policy and in violation of [Aramark's] own policies and procedures." In addition, as affirmative defenses, Aramark has asserted that (1) Haney's claim is preempted under section 301 of the LMRA and (2) all of its acts were "just, fair, privileged, with good cause, non-discriminatory, non-retaliatory, non-harassing and in good faith." These allegations, Aramark argues, will require the interpretation of the provision in the CBA that states it "shall not discharge or suspend any employee . . . without just cause . . . ."

First, the allegation regarding the violation of Aramark's policies and procedures is irrelevant to Haney's legal theory that he was discharged in violation of public policy, the legal theory that he is pursuing in this appeal. In other words, a violation of Aramark's policies and procedures is not an element essential to the legal theory under which he is seeking relief. Thus, the inclusion of a superfluous allegation does not distinguish this case from "typical" wrongful discharge cases. (See *Lingle, supra,* 486 U.S. at p. 413.) Also, Aramark's reliance on the language and analysis contained in *Harper v. San Diego Transit Corp.* (9th Cir. 1985) 764 F.2d 663 is not compelling

---

[10] As a result of *Lingle* and subsequent decisions, one author has described the limits of preemption under section 301 of the LMRA as follows: "[S]ection 301 does not preempt state law claims that do not necessitate a construction of the collective bargaining agreement. This is particularly the case with respect to claims alleging intentional or tortious conduct on the part of an employer. The following types of claims are typical of those not preempted under section 301: [¶] a. Discrimination claims based upon state antidiscrimination statutes; [¶] b. Public policy tort claims alleging retaliatory discharge for exercising a statutory right; [¶] c. Whistleblower claims, in which an employee alleges retaliatory discharge for reporting an employer's violation of state or federal law; [¶] d. Contract claims alleging a breach of a promise made by an employer to an employee who was not then in a bargaining unit or covered by a collective bargaining agreement; and [¶] e. Most often, claims for intentional infliction of emotional distress." (Befort, *Demystifying Federal Labor and Employment Law Preemption* (1998) 13 Lab. Law. 429, 436–437, fns. omitted.)

because that case was decided before *Lingle* and did not fully anticipate the reasoning adopted by the United States Supreme Court.

Second, to determine if Haney's claim for wrongful discharge in violation of public policy is preempted because it requires the interpretation of the CBA, "we look to the elements of the claim, the terms of the agreement, the facts which plaintiff believes support the cause of action and those the defendant may assert in his defense. [Citation.]" (*Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 40–41 [90 Cal.Rptr.2d 15] [claim for wrongful discharge in violation of public policy not preempted].)

The claim for wrongful discharge in violation of public policy requires Haney to prove (1) he was employed by Aramark, (2) Aramark discharged him, (3) the alleged violation of public policy was a motivating reason for the discharge, and (4) the discharge caused him harm. (Jud. Council of Cal. Civ. Jury Instns. (2004) CACI No. 2430; see BAJI Nos. 10.06, 10.41, 10.42 & 10.43.)

The first two elements are not disputed. The motivating reason for Haney's discharge is contested, but that contest involves factual issues that can be resolved without interpreting the provisions of the CBA. (*Lingle, supra,* 486 U.S. at p. 407.) Consequently, this case is not distinguishable from *Lingle,* where it was not necessary to interpret the just cause termination provision in the CBA to resolve the employee's claim of retaliatory discharge for filing a worker's compensation claim. Instead, this is a "typical case" where the superior court can resolve the "retaliatory discharge claim without interpreting the 'just cause' language of a collective-bargaining agreement." (*Lingle, supra,* at p. 413.)

Furthermore, Aramark's assertion of a just cause defense does not require the interpretation of the CBA. In *Cramer v. Consolidated Freightways, Inc.* (9th Cir. 2001) 255 F.3d 683, 691 (en banc), the Ninth Circuit Court of Appeals stated, "If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense."

Accordingly, we conclude that Haney's claim for wrongful discharge in violation of a public policy is independent of the CBA and, thus, is not preempted by section 301 of the LMRA.

III. *The Public Policy Requirement Is Met by the Allegations of Fraud*

Haney has alleged that he was terminated because he objected to Aramark's practice of overcharging and misleading customers, and he refused to

follow Aramark's practice of defrauding them. Haney further has alleged that his termination was in violation of public policy, and he supports that allegation with references to Civil Code sections 1572, 1709 and 1710, as well as Penal Code sections 484[11] and 536. In his appellant's reply brief, Haney also asserts that Aramark's practice of defrauding its customers constitutes an unfair business practice under Business and Professions Code section 17200.[12] Furthermore, in response to Aramark's contention that the activity complained of by Haney is, at most, a simple breach of contract, Haney contends that Aramark instructed route sales representatives to charge customers for one-way items they did not require or receive and not to inform the customers of this practice.

■ The California Supreme Court has recognized common law protection from certain types of retaliatory discharge. (See *Gantt v. Sentry Insurance* (1992) 1 Cal.4th 1083, 1097 [4 Cal.Rptr.2d 874, 824 P.2d 680] (*Gantt*) [retaliation for testifying truthfully regarding a coworker's sexual harassment claim]; *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 178 [164 Cal.Rptr. 839, 610 P.2d 1330] (*Tameny*) [retaliation for refusal to participate in an illegal price-fixing scheme].) To support a common law wrongful discharge claim, the public policy "must be: (1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." (*Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 894 [66 Cal.Rptr.2d 888, 941 P.2d 1157].)

■ Where the policy is reflected in a provision of the Penal Code, the first, second[13] and fourth elements are easily met because the Supreme Court

---

[11] "(a) Every person . . . who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money . . . is guilty of theft." (Pen. Code, § 484.)

[12] "As used in this chapter, unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." (Bus. & Prof. Code, § 17200.) Any person who violates the chapter addressing unfair trade practices is guilty of a misdemeanor. (Bus. & Prof. Code, § 17100.)

[13] Although not essential to the outcome of this appeal, we note the public interest in the integrity of the securities markets and the concern that might arise where fraudulent billings are used by a company to boost its income and that increased level of income is then publicly reported by the company to the investing public. In this case, ARAMARK Corporation, which is traded on the New York Stock Exchange under the symbol RMK, reported income from its fiscal years for 1998 and 1999 as part of the financial statements it filed with the Securities and Exchange Commission. (See ARAMARK, Investor Relations—SEC Filings <http://www.corporate-ir.net/ireye/ir_site.zhtml?ticker=RMK&script=1901> [as of June 23, 2004].)

has stated that "an employer's obligation to refrain from discharging an employee who refuses to commit a criminal act . . . reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes. As such, a wrongful discharge suit exhibits the classic elements of a tort cause of action." (*Tameny, supra,* 27 Cal.3d at p. 176.) In light of *Tameny* and the fact that theft through fraudulent representation or pretense has long been defined as a crime by statute in California, we conclude that when an employer discharges an employee who refuses to defraud a customer, the employer has violated a fundamental public policy and may be liable in tort for wrongful discharge.

Although we have not found a California case involving fraudulent billing practices that did not involve a public entity,[14] other jurisdictions have held that an employee should not be forced to choose between his or her livelihood and committing fraud or other crimes. (*Brown v. Hammond* (E.D.Pa. 1993) 810 F.Supp. 644.) In the *Brown* case, a paralegal-secretary stated a viable cause of action by alleging that she was terminated for refusing to directly participate in a fraudulent billing practice of her law firm employer. The practice to which she objected involved billing clients for time she spent on client matters, as attorney time, without any notice to the client that the work was being done by a nonlawyer. (*Brown v. Hammond, supra,* at p. 646; see *Jones v. Stevinson's Golden Ford* (Colo.Ct.App. 2001) 36 P.3d 129 [employee refused to "upsell" fuel injector flushes on vehicles that did not need this maintenance; "upselling" of that type violated Colorado's Motor Vehicle Repair Act and Consumer Protection Act].)

■ Accordingly, Haney's allegations that he was terminated for complaining about and refusing to engage in fraudulent billing practices are sufficient to state a claim for retaliatory discharge in violation of a public policy.[15] Furthermore, triable issues of material fact exist as to Aramark's motive in discharging Haney. Therefore, Aramark is not entitled to summary adjudication of Haney's second cause of action.

IV. *Aramark's Petition for Rehearing*

On July 27, 2004, Aramark filed a petition for rehearing in this court along with an appendix of evidence supporting the petition. We granted rehearing to

---

[14] *Southern Cal. Rapid Transit Dist. v. Superior Court* (1994) 30 Cal.App.4th 713 [36 Cal.Rptr.2d 665] (discharge of employees by transportation district in retaliation for reporting fraud in connection with certification of minority contractor violated public policy).

[15] This opinion does not hold, and should not be read to imply, that an employee who is discharged for complaining about breaches of contract committed by the employer is able to state a wrongful discharge claim based on a violation of a substantial and fundamental public policy.

address Aramark's contentions that, among other things, this court failed to consider evidence that (1) Haney gathered information from coworkers who were afraid to complain and used this information in his complaints to management and (2) coworkers also complained about the same issues Haney raised with management. Despite the requirements of section 437c, Aramark asserts this court *must* consider this evidence, "even if all of it was not clearly set forth in the separate statement." Aramark argues this court must go beyond the facts set forth in the separate statement and the evidence referenced in the separate statement "as a matter of mandatory federal law" because the issue of preemption is jurisdictional.[16]

In effect, Aramark argues that the rules of law used in California for determining whether a moving party is entitled to summary judgment or summary adjudication are irrelevant in this case. Aramark extrapolates this novel position regarding jurisdictional issues raised in the context of a motion for summary judgment or adjudication from *Longshoremen v. Davis, supra*, 476 U.S. 380, a case in which a party was allowed to raise a preemption defense under the NLRA for the first time in a motion for judgment notwithstanding the verdict. (*Id.* at p. 394.) We conclude that *Longshoremen v. Davis* is distinguishable from this case based on its procedural context. Here, the result of our ruling is not the equivalent of holding the jurisdictional argument has been waived because, on remand, Aramark is not precluded from pursuing its theory that the superior court has no jurisdiction because of federal preemption under the NLRA.[17] As a result, the requirements of section 437c are not overridden by federal law in this case.

Finally, we express no opinion on whether the evidence now cited by Aramark is sufficient to show that Haney arguably was (1) actually authorized to act on behalf of one or more employees or (2) engaged in actual group action. Nor should any inference be drawn regarding how those issues would have been resolved had Aramark's moving papers been more thorough. One reason to avoid this speculation is that one cannot know what evidence Haney would have presented in response had Aramark's separate statement been more explicit in addressing authorization or actual group action.

---

[16] Aramark also contends this court has the discretion to look beyond the facts and evidence included in the separate statement. Assuming a court of review has such discretion, we decline the invitation to exercise it as requested.

[17] Similarly, Haney will be able to pursue his theory that, even if he engaged in arguably concerted activity, one or more of the exceptions to preemption apply. (See fn. 9, *ante*.)

## DISPOSITION

The judgment is reversed. The superior court is directed to vacate its order granting Aramark's motion for summary adjudication as to Haney's second cause of action and to enter an order denying that motion. Appellant is awarded costs on appeal.

Harris, Acting P. J., and Gomes, J., concurred.

Respondent's petition for review by the Supreme Court was denied December 1, 2004.