[No. F058298. Fifth Dist. Nov. 18, 2010.]

JOHN-DAVID SCHOFIELD et al., Petitioners, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
DIOCESE OF SAN JOAQUIN et al., Real Parties in Interest.

## COUNSEL

Wild, Carter & Tipton, Russell G. VanRozeboom; Haley & Bilheimer and Allan Scott Haley for Petitioners.

No appearance for Respondent.

Law Offices of Michael O. Glass, Michael Owen Glass; Goodwin Procter, David Booth Beers and Adam M. Chud for Real Parties in Interest.

## OPINION

**ARDAIZ, P. J.**—This matter comes before us on a petition for writ of mandate after the trial court granted a motion for summary adjudication. We conclude plaintiffs' first cause of action presents a purely ecclesiastical controversy not justiciable by civil courts. Accordingly, the trial court erred in granting plaintiffs' motion for summary adjudication on that cause of action.

### I. Facts and Procedural History

1. *Standard of Review of Factual Issues.*

On review of an order granting summary adjudication, we apply the same standard of review applicable on appeal from a grant of summary judgment. (See *Haney v. Aramark Uniform Services, Inc.* (2004) 121 Cal.App.4th 623, 631 [17 Cal.Rptr.3d 336].) Accordingly, " '[b]ecause this case comes before us after the trial court granted a motion for summary [adjudication], we take the facts from the record that was before the trial court when it ruled on that motion. [Citation.] " 'We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that

to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party. [Citation.]' [Citation.]" (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 716–717 [68 Cal.Rptr.3d 746, 171 P.3d 1082].)

## 2. *The Underlying Dispute.*

The Protestant Episcopal Church in the United States of America (commonly known as the Episcopal Church) is "a constituent member of the Anglican Communion." The Anglican Communion is a worldwide organization of dioceses, provinces, and regional churches under the ecclesiastical leadership of the Archbishop of Canterbury, who is Primate of the Church of England.

The various regional Anglican churches, such as the Episcopal Church, have a significant latitude in adopting forms and modes of worship that they deem appropriate to local conditions. Developments in the Episcopal Church have not always been reflected by similar changes in other regional Anglican churches. The nature of disparate views is reflected by petitioner John-David Schofield in a 2007 address to a meeting of diocesan leaders, for "twenty years and more we have watched The Episcopal Church lose its way," relegating Holy Scripture to mere historical documents, appropriating powers to the central governing body of the church that the body had never before claimed, and ultimately making "unilateral decisions about theology, sexuality, and ordination potentially cutting itself off from the Anglican Communion." As a result of these ecclesiastical differences with the leadership of the Episcopal Church, Schofield, as Bishop of the Diocese of Fresno, and other local church leaders, began to take steps to attempt to withdraw the diocese from the Episcopal Church. We describe these steps in some detail:

### a. *Consecration of Bishop*

The constitution of the Episcopal Church provides that the bishop of a diocese "shall be chosen agreeably to rules prescribed" by the diocese, acting through its annual "convention." However, no person selected by a diocese shall be ordained as bishop except upon consent of a majority of "the Bishops of this Church exercising jurisdiction" and a majority of the governing committees of the dioceses making up the Episcopal Church. (If the diocese selects a bishop within 120 days before a scheduled convocation of the General Convention of the Episcopal Church, "the consent of the House of Deputies" of that convention shall be required in place of the consent of the governing committees.) Finally, the constitution provides that "[n]o one shall be ordained and consecrated Bishop by fewer than three Bishops."

In conformity with these requirements of the national constitution, the original governing documents of the Diocese of San Joaquin provided for election of a new bishop at an annual or special meeting of the diocesan convention. Ordination and consecration of the bishop-elect required consent of the governing committees (or the House of Deputies) and of the bishops of the Episcopal Church. In addition, ordination and consecration were to be performed by "no fewer than three Bishops of the Episcopal Church."

In 2006, the governing documents of the Diocese of San Joaquin were amended pursuant to resolutions at the 2004 and 2005 annual conventions of the diocese. Omitted from the amended procedures was any requirement that the local choice of bishop be approved by the national church. Omitted from the amended procedures was any requirement that the bishop be ordained and consecrated by at least three Episcopal bishops. Instead, if the bishop-elect was "already consecrated a Bishop in the Apostolic Succession," the bishop-elect would become bishop upon the bishop-elect's acceptance of election. If not already so consecrated, the bishop-elect must, in addition, be consecrated "as a Bishop in the Apostolic Succession" in a manner not specified in the governing documents.

### b. *Secession from the Episcopal Church*

When the Diocese of San Joaquin was created in 1961, the constitution of the Episcopal Church provided that new dioceses could be admitted into union with the Episcopal Church only if they "acceded" to the constitution and canons (i.e., bylaws) of the Episcopal Church. The original constitution of the diocese provided that the diocese "accedes to the Constitution of that branch of the Holy Catholic Church known as the Protestant Episcopal Church in the United States of America and recognizes the authority of the General Convention of the same."

Pursuant to Schofield's recommendation, the 2006 and 2007 annual conventions voted to amend the diocesan constitution so as to delete the "accession" and "authority" provisions and to substitute in their place the following provisions: "The Diocese of San Joaquin is constituted by the Faith, Order, and Practice of the One, Holy, Catholic, and Apostolic Church as received by the Anglican Communion. The Diocese shall be a constituent member of the Anglican Communion and in full communion with the See of Canterbury." As described in diocesan council minutes, the diocese thereby "seceded and disassociated from The Episcopal Church."

c. *Name Change and Reaffiliation*

Other traditionalist regional churches in the Anglican Communion reached out to Episcopal Church dioceses that disagreed with the teachings of the Episcopal Church. In particular, after the initial passage of the amendment just described (which was required to be passed at two successive annual conventions), the Provincial Synod of the Anglican Church of the Southern Cone of South America "welcome[d] into membership of our Province on an emergency and pastoral basis" those dioceses of the Episcopal Church that wished to "continue in the mainstream of the Anglican Communion and be faithful to its Biblical and historic teaching and witness." At the 2007 annual convention, the membership voted to adopt a new diocesan canon XXXVIII, which states: "The Diocese of San Joaquin is a full member of the Anglican Province of the Southern Cone of South America." In 2008, Schofield and the membership that had withdrawn from the Episcopal Church took steps purporting to change the name of the diocese to the Anglican Diocese of San Joaquin.

3. *The Response of the Episcopal Church.*

Title IV of the canons of the Episcopal Church is entitled Ecclesiastical Discipline. Following the procedures set forth in canon 9, section 1, a review committee composed of bishops, clergy, and lay members of the Episcopal Church certified to the presiding bishop that Schofield had "abandoned the communion of this Church by an open renunciation of the Doctrine, Discipline or Worship of this Church." The presiding bishop "inhibited" Schofield and ordered that after January 11, 2008, he cease "exercising the gifts of ordination in the ordained ministry of this Church." Thereafter, effective March 12, 2008, the presiding bishop, with the consent of a majority of the House of Bishops, deposed Schofield as bishop of the diocese.

At a special meeting of the diocesan convention on March 29, 2008, the diocese (that is to say, that minority of parishes and members that had not seceded in 2007) elected real party in interest Jerry A. Lamb as provisional bishop. The convention adopted resolutions to restore the name and articles of incorporation of the diocese to those in effect prior to the 2007 changes described above. By letter of April 3, 2008, Lamb, as "Bishop of the Diocese of San Joaquin," requested that Schofield turn over all church property to

him. Schofield, as "Bishop of San Joaquin," responded with an offer to meet with Lamb to determine points of agreement and disagreement, since the two "will apparently be overseeing separate ministries in the same geographical area." Schofield, together with the clergy and the governing committees of the withdrawing parishes, remain in possession and control of the property of the diocese.

## 4. *The Present Action.*

Plaintiffs (real parties in interest in this proceeding) are the Episcopal Church, the Diocese of San Joaquin, Bishop Jerry A. Lamb, and the Protestant Episcopal Bishop of San Joaquin, a corporation sole.[1] Defendants (petitioners in this writ proceeding) are John-David Schofield, the Episcopal Foundation of San Joaquin, Inc. (the foundation), the Diocesan Investment Trust of the Diocese of San Joaquin (the trust), and the Anglican Diocese Holding Corporation. The foundation and the trust are entities formed to hold property of the diocese; the bishop of the Diocese of San Joaquin is, by virtue of that office, president and chair of the board of the foundation and president of the board of trustees of the trust. (Also named as a defendant is Merrill Lynch, Pierce, Fenner & Smith, Inc., which holds investment accounts whose ownership is disputed by the parties, but that defendant is only involved in causes of action not pertinent to the present proceeding.)

The operative second amended complaint alleges two causes of action for declaratory relief, as well as related causes of action for injunctive relief, breach of fiduciary duty, conversion, ejectment, fraudulent conveyance, and quiet title. The present action involves only the first cause of action for declaratory relief.[2]

---

[1] Corporations Code section 10002 provides that "[a] corporation sole may be formed under this part by the bishop, chief priest, presiding elder, or other presiding officer of any religious denomination, society, or church, for the purpose of administering and managing the affairs, property, and temporalities thereof." Such a corporation consists only of the relevant religious officeholder and has no other corporate directors, members, or officers. In other respects, it has the same powers and duties as other corporations. The general purpose of a corporation sole is to provide a continuing entity to own property and conduct the business affairs of a local religious institution; each successor to the office of, e.g., bishop, upon fulfilling certain formalities specified in Corporations Code section 10010 succeeds to incumbency of the corporation sole. (See 9 Witkin, Summary of Cal. Law (9th ed. 1989) Corporations, § 399, p. 851.)

[2] After the motion for summary adjudication had been taken under submission, real parties filed a fourth amended complaint. The second and fourth amended complaints are identical except that the fourth amended complaint adds allegations concerning Wild, Carter & Tipton concerning funds transferred to that firm by Schofield. There were no new allegations or other amendments to the first cause of action. The trial court rejected petitioners' claim that the filing of the fourth amended complaint rendered moot the motion for summary adjudication.

The first cause of action for declaratory relief sets forth the dispute we have outlined above. It alleges there presently is a dispute between plaintiffs and defendants whether Schofield continues to be incumbent Bishop of the Diocese of San Joaquin and, therefore, president of the trust and president and chair of the foundation.

Plaintiffs moved for summary adjudication of the first cause of action. The trial court granted the motion. It concluded that the actions of the diocese in attempting to withdraw from the Episcopal Church were ultra vires and impermissible under the constitution and canons of the national church. Because the amendments to the diocesan governing documents were ineffective, the actions of the national church in deposing Schofield were effective and Lamb was his successor, duly installed and recognized by the national church. As successor bishop, Lamb was the current incumbent of the corporation sole and was ex officio president of the trust and president and chair of the foundation.

Petitioners filed the present petition for writ of mandate contending, among other points, that the erroneous determination of the first cause of action would infect the trial of the remaining causes of action and require reversal of any ensuing judgment on those causes of action. We issued an order to show cause. For the reasons that follow, we grant the petition for writ of mandate.

## II.  Discussion

Civil courts are often called upon to resolve disputes concerning ownership of church property. The United States Supreme Court undertook such resolution as early as 1871 (see *Watson v. Jones* (1871) 80 U.S. 679 [20 L.Ed. 666]) and the California Supreme Court undertook such resolution as recently as 2009 (see *Episcopal Church Cases* (2009) 45 Cal.4th 467 [87 Cal.Rptr.3d 275, 198 P.3d 66]). The issue before us in this case is not resolution of a property dispute, although other causes of action still pending in the trial court do present that issue. The summary adjudication of the first cause of action, and the petition seeking review of that order, however, present solely this issue: who is the Bishop of the Diocese of San Joaquin, John-David Schofield or Jerry A. Lamb? This is an issue the First Amendment forbids us from adjudicating.

■  Religious institutions and their members are equally entitled as other members of society to seek resolution of property disputes in civil court. (*Watson v. Jones, supra*, 80 U.S. at p. 714.) In resolving such disputes, the

---

Petitioners have not renewed the claim of mootness in the present proceeding. We grant real parties' motion for judicial notice that they have requested dismissal of the complaint as to Wild, Carter & Tipton.

First Amendment requires that civil courts must take care not to adjudicate questions of religious doctrine. (*Episcopal Church Cases, supra,* 45 Cal.4th at p. 479.) But if the dispute does not involve the ownership of property—if it concerns issues such as church doctrine, membership, credentials of clergy, discipline of clergy and members, or church governance and organization—the matter is to be left to internal decisionmaking processes of the church itself. (See *id.* at p. 485; see also *Jones v. Wolf* (1979) 443 U.S. 595, 604–605 [61 L.Ed.2d 775, 99 S.Ct. 3020]; *Kedroff v. St. Nicholas Cathedral* (1952) 344 U.S. 94, 116 [97 L.Ed. 120, 73 S.Ct. 143]; *New v. Kroeger* (2008) 167 Cal.App.4th 800, 824–825; *Conley v. Roman Catholic Archbishop* (2000) 85 Cal.App.4th 1126, 1130 [102 Cal.Rptr.2d 679].) ■ The dispute set forth in the request for declaratory relief in the first cause of action, namely, whether Schofield or Lamb is the incumbent Episcopal Bishop of the Diocese of San Joaquin, is quintessentially ecclesiastical. Accordingly, the trial court erred in adjudicating that cause of action and, upon proper motion, must dismiss that cause of action.

Three facts are established by the record and are, in any event, "ecclesiastical facts" that the courts have no jurisdiction to adjudicate. First, before and through January 11, 2008, Schofield was the Episcopal Bishop of the Diocese of San Joaquin; on that day, his powers as Episcopal Bishop were suspended by the national church. Second, after March 29, 2008, Lamb was the Episcopal Bishop of the Diocese of San Joaquin, duly recognized by the national church. Third, at some point Schofield became the Anglican Bishop presiding over an Anglican Diocese of San Joaquin, affiliated with the Anglican Province of the Southern Cone of South America. In further proceedings in the trial court, these facts may be relevant to the court's consideration of the issues before it, but the validity of such removals and appointments are not subject to further adjudication by the trial court. The continuity of the diocese as an entity within the Episcopal Church is likewise a matter of ecclesiastical law, finally resolved, for civil law purposes, by the Episcopal Church's recognition of Lamb as the bishop of that continuing entity.

■ Nevertheless, civil court jurisdiction is properly invoked to resolve issues concerning property transfers assertedly made by Schofield while he was the duly constituted Bishop of the Diocese of San Joaquin. Resolution of these issues involves consideration of both the powers invested in the bishop under the church law at the time he took those actions, and the powers of the bishop under state corporate, trust, and property law at the time he took these actions. In the adjudication of disputes concerning religious property, the First

Amendment does not require the states to follow any particular approach to adjudication of church property disputes. (*Episcopal Church Cases, supra*, 45 Cal.4th at p. 479.) After surveying the various existing approaches to resolution of such disputes, the California Supreme Court concluded that California courts must follow the "neutral principles of law" approach to such disputes. (*Id.* at p. 480.)

The court summarized that approach: "State courts must not decide questions of religious doctrine; those are for the church to resolve. Accordingly, if resolution of a property dispute involves a point of doctrine, the court must defer to the position of the highest ecclesiastical authority that has decided the point. But to the extent the court can resolve a property dispute without reference to church doctrine, it should apply neutral principles of law. The court should consider sources such as the deeds to the property in dispute, the local church's articles of incorporation, the general church's constitution, canons, and rules, and relevant statutes, including statutes specifically concerning religious property . . . ." (*Episcopal Church Cases, supra*, 45 Cal.4th at p. 485.)

In further proceedings, the trial court should apply neutral principles of law to resolve property disputes presented by the remaining causes of action. These neutral principles include First Amendment rights of individuals and corporations (see *Citizens United v. Federal Election Comm'n* (2010) 558 U.S. ___, ___ [175 L.Ed.2d 753, 130 S.Ct. 876, 899]), general California statutory and common law principles governing transfer of title by the legal title holder, the law of trusts, including establishment of trusts and transfers by a trustee in contravention of a trust upon the property (if a trust is established by the evidence), and corporations law, including the law of corporations sole (see Corp. Code, § 10010) and general principles of corporate governance. Other neutral principles of civil law may be relevant; and the governing documents of the diocese and the national church, to the extent those documents may establish trust relationships and limit or expand corporate powers. (See *Episcopal Church Cases, supra*, 45 Cal.4th at p. 485.) Thus, the trial court may be required to determine whether properties claimed by both plaintiffs and defendants were actually transferred by their legal owners under California law, and whether otherwise-valid transfers violated the provisions of a valid express or implied trust imposed on the property. But we emphasize that in resolution of, for example, trust issues, the court is required to determine the terms of the trust based on the applicable documents and the civil law, not on the basis of religious doctrine. (See *Jones v. Wolf, supra*, 443 U.S. at p. 604.)

## DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to vacate its July 21, 2009, order in Fresno County Superior Court No. 08CECG01425AMC granting plaintiffs' motion for summary adjudication.

Cornell, J., and Gomes, J., concurred.