Filed 3/14/13  Diocese of San Joaquin v. Nelson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| DIOCESE OF SAN JOAQUIN et al., | C067958 |
| Plaintiffs and Appellants, | (Super. Ct. No. 39-2010-00248560-CU-MC-STK) |
| v. | |
| LEE M. NELSON et al., | |
| Defendants and Respondents. | |

In 2007, the St. John's Protestant Episcopal Church of Stockton, which is a corporation (Parish Corporation), decided to disaffiliate itself from the Episcopal Church (Church) over doctrinal differences.  The Diocese of San Joaquin (Diocese) of the Episcopal Church filed an action for declaratory relief against the Parish Corporation, claiming that the property retained by the Parish Corporation is owned by the Diocese and Church.  The Diocese also named several individual defendants:  the Parish Corporation's priest and members of the Parish Corporation's vestry and board of directors (Individual Defendants).  The Diocese does not seek damages; instead, it seeks

1

declarations that the Diocese owns and is entitled to possess and control the property and that, upon disaffiliation, the Individual Defendants could no longer act on behalf of the Parish Corporation.

The Individual Defendants demurred to the complaint. The trial court sustained the demurrer, citing Code of Civil Procedure section 1061, which gives the court *discretion* to deny declaratory relief if the relief is not "necessary or proper at the time under all the circumstances."[1] The Parish Corporation was not a party to the demurrer proceedings and remains as a defendant in the action.

The Diocese appeals. It claims the trial court did not rely on section 1061 to dismiss the action as to the Individual Defendants and, therefore, the only relevant inquiry is whether the demurrer was sustained on the merits of the action, which inquiry requires a *de novo*, rather than an abuse of discretion, standard of review. The Diocese argues for the first time in its reply brief on appeal that the trial court abused its discretion under section 1061.

We conclude that the trial court actually relied on section 1061 to dismiss the action as to the Individual Defendants and, because the Diocese failed to argue the section 1061 question in its opening brief, it has forfeited consideration of that question on appeal. In any event, the trial court did not abuse its discretion by dismissing the complaint as to the Individual Defendants.

BACKGROUND CONCERNING DISAFFILIATION CASES

While this opinion does not reach the merits of who owns the parish property, a brief summary of similar cases is helpful to understanding the issues relevant to this action.

---

[1] References in this opinion to an unspecified code are to the Code of Civil Procedure.

" 'The Protestant Episcopal Church in the United States of America . . . , organized in 1789, was the product of secession of the Anglican church in the colonies from the Church of England, the latter church itself being the product of secession from the Church of Rome in 1534.' [Citation.] The church . . . is governed by a general convention and a presiding bishop. In the United States, the Episcopal Church is divided geographically into dioceses, including [here, the Diocese of San Joaquin]. Each diocese is governed by a diocesan convention and a bishop. A diocese is itself divided into missions and parishes, which are individual churches where members meet to worship. A parish is governed by a rector and a board of elected laypersons called the vestry. [Citation.]" (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 474.)

Over the past decade, some California parishes have disaffiliated from the Church over questions of doctrine. This has led to disputes over who owned the parish property. (*Episcopal Church Cases, supra,* 45 Cal.4th at pp. 475-476.) In *Episcopal Church Cases*, the Supreme Court held that (1) secular courts must not resolve questions of church doctrine, on which the courts must defer to the highest relevant ecclesiastical authority; however, (2) if the court can resolve the dispute over property ownership without reference to church doctrine, it should do so applying neutral principles of law. (*Id*. at p. 485.) In the case before it, the Supreme Court concluded that the local parish held the property in trust for the Church and, therefore, upon disaffiliation, the property reverted to the Church. (*Id*. at p. 493.)

A wrinkle in the case before us, different from *Episcopal Church Cases*, is that the disaffiliation came at the diocese level. The Diocese of San Joaquin, acting through Bishop John-David Schofield, disaffiliated from the Episcopal Church and took steps to change its name to the Anglican Diocese of San Joaquin. (*Schofield v. Superior Court* (2010) 190 Cal.App.4th 154, 158-159.) And St. John's Parish joined in the diocese's disaffiliation.

3

The plaintiffs here are the Diocese of San Joaquin and Bishop Jerry A. Lamb, the provisional bishop installed by the Episcopal Church after Schofield's disaffiliation. (*Schofield v. Superior Court, supra,* 190 Cal.App.4th at pp. 159-160.)

In 2010, the Fifth Appellate District decided a case that presented the question of who is the incumbent bishop of the Diocese of San Joaquin: Schofield or Lamb. The court concluded that it is a question of church doctrine. (*Schofield v. Superior Court, supra,* 190 Cal.App.4th at pp. 161-162.) The court then turned to the ecclesiastical authorities and determined that the Church had deposed Schofield and recognized Lamb as the bishop of the Diocese. (*Id*. at p. 162.) That determination, however, left unresolved "issues concerning property transfers assertedly made by Schofield while he was the duly constituted Bishop of the Diocese of San Joaquin." (*Ibid*.) The Fifth Appellate District directed that those issues must be resolved in the trial court applying neutral principles of law. (*Id*. at pp. 162-163.)

PROCEDURAL BACKGROUND

We begin with some pertinent allegations in the complaint:

"7. Defendant [Parish Corporation] . . . is a non-profit religious corporation . . . . At all times relevant to this action, Defendant Parish Corporation has been an ecclesiastical entity in union with the Diocese and subordinate to the Constitutions, Canons, and Conventions of the Church and the Diocese. The Parish Corporation was created for the convenience of the parish to conduct its temporal affairs. The Parish Corporation is named as a Defendant in this action because the individual Defendants have illegally usurped control of the Parish Corporation and are using and occupying the Parish Premises and Parish Assets for their own purposes. The individual Defendants lack authority to act on behalf of the Parish Corporation.

"8. Defendant Lee M. Nelson ('Nelson') is the purported priest and rector exercising *de facto* control of the Parish Corporation and is in possession of, and exercising control over, the Parish Premises and Parish Assets without the permission,

4

consent, or approval of the Plaintiffs or the Church. On or about February 2009, Defendant Nelson was allegedly installed as the rector of St. John's Stockton in the Diocese of San Joaquin by the then deposed and former Bishop of the Diocese, John-David Schofield. Defendant Nelson has neither obtained the consent of Plaintiff Bishop Lamb to be the rector of St. John's parish as required by the Canons of the Church or the Diocese, nor sought a license to officiate in the Diocese of San Joaquin. On May 18, 2010, the Episcopal Diocese of Fort Worth, the diocese where Defendant Nelson is canonically resident, determined that he has abandoned the Communion of the Church and has been inhibited from officiating as an ordained minister of the Episcopal Church for a period of six months and is liable for deposition and removal from the ministry of the Church.

"9. Defendants Wilson Melchor, Bob Johnson, Gary Crowder, Phil Berghuis, Honey Rosal, Pete Ottesen, Mike Combs, Rick Dunn, Steve Olmstead, Rachel Allanigue, Ted Yumoto and Jessica Aaron are all individuals and former members of the Church, exercising *de facto* control of the Parish Corporation and purporting to be the vestry and board of directors of the Parish Corporation. These defendants are in possession of, and exercising control of the Parish Premises and other Parish Assets without the permission, consent, or approval of the Plaintiffs or the Church."

"64. In or about 1855, significant portions of the Parish Premises were acquired by the Parish Corporation from private parties under two deeds. . . . [¶] . . . Additional properties constituting the Parish Premises were obtained by the Parish Corporation in or about 1957, 1993, 1995 and in 2002."

"66. In a series of actions culminating in December 2007, Schofield, the former bishop of the Diocese and some of the Defendants, attempted to disaffiliate the Diocese and its congregations, including the Parish, from the Church and affiliate them with another religious denomination.

"67. This disaffiliation attempt of Schofield and the Defendants supported resolutions at the annual meeting of the Diocesan Convention that consisted of purported changes to the Diocesan Constitution and Canons of the Diocese and the Articles of Incorporation of the Corporation Sole that eliminated references to the accession of the Diocese to the Constitution and Canons of the Church. These amendments were *ultra vires* and null and void and contrary to the Canons and Constitutions of the Church and the Diocese."

"69. After the attempted disaffiliation efforts described above, the Church's House of Bishops met in March 2008, and pursuant to Canon IV.9.2 of the Church, authorized the Presiding Bishop to depose and remove Schofield from the ordained ministry of the Church, which the Presiding Bishop did that day.

"70. Upon Schofield's deposition and removal as the Bishop of the Diocese of San Joaquin, his positions as the incumbent of the Corporation Sole, and President of the Investment Trust and the Episcopal Foundation, automatically terminated."

The complaint seeks declarations that the property is held for the benefit of the Diocese and that the property must be turned over to the Diocese. The complaint also seeks a declaration that, upon disaffiliation from the Church, the "Individual Defendants" no longer had authority to act on behalf of the Parish Corporation.

Attached to the complaint is a legal description of the property subject to the action.

The Parish Corporation answered the complaint, but the Individual Defendants instead demurred. They argued that the dispute over the property was between two corporate entities: the Diocese and the Parish Corporation. They claimed that the Diocese was trying to pierce the corporate veil. The Diocese opposed the Individual Defendants' demurrer, and the trial court held a hearing.

During the hearing, the trial court asked counsel for the Diocese why the Individual Defendants were necessary to the action. Counsel responded that the

6

Individual Defendants are in possession of the property, even though the Parish Corporation owns the property. The court noted, however, that the Individual Defendants do not have a leasehold on the property but are merely corporate directors. In response to the court's question concerning what gives the Individual Defendants a possessory interest, counsel directed the court's attention to a Church canon that all parish property is held in trust for the Church and Diocese.

The Church canon cited by counsel states: "All real and personal property held by or for the benefit of any Parish, Mission or Congregation is held in trust for this Church and the Diocese thereof in which such Parish, Mission or Congregation is located. The existence of this trust, however, shall in no way limit the power and authority of the Parish, Mission or Congregation otherwise existing over such property so long as the particular Parish, Mission or Congregation remains part of, and subject to, this Church and its Constitutions and Canons."

The trial court stated that it would sustain the demurrer without leave to amend. It said that the canon cited by counsel for the Diocese "does not seem to provide in any way that the individuals have control over this property. . . . [T]o take the individuals out I don't think really impairs the plaintiff's claims as far as the property transfers are concerned." The court added: "[S]hould discovery reveal that some of these people ought to be involved in the case, then I think that is the way you bring it back in. But at this point, I don't see any facts that would support their being in the case, and I also don't see any way to amend the complaint that would create a basis for that."

Over the Diocese's objection, the Individual Defendants proposed, and the trial court signed, an order stating: "[T]he Court has concluded that Plaintiffs' Complaint fails to demonstrate to the satisfaction of the Court why it is 'necessary or proper at the time under all the circumstances' to sue the Individual Defendants in order to obtain the declaratory relief they seek against the corporate defendant. (See Code Civ. Proc. § 1061.)" The order added that dismissal was "without prejudice," a reference to its oral

7

statement that the Diocese would be allowed to "bring back" individuals as defendants if it was established through discovery that they are necessary to the action.

The trial court dismissed the action as to the Individual Defendants, and the Diocese appeals.

SECTION 1061

The Code of Civil Procedure allows a party to seek a declaration from the courts concerning the parties' legal rights and duties "in cases of actual controversy relating to the legal rights and duties of the respective parties . . . ." (§ 1060.) However, "[t]he court may refuse to exercise the power granted by [the statutes governing declaratory relief] in any case where its declaration or determination is not necessary or proper at the time under all the circumstances." (§ 1061.)

"The discretion to be exercised pursuant to section 1061 is not unlimited. It is a legal or judicial discretion subject to appellate review, and declaratory relief must be granted when the facts justifying that course are sufficiently alleged. [Citation.] Refusal is limited to cases where a declaration of rights and obligations would be unnecessary or improper at the time under all the circumstances. The determination rests on the facts in each case." (*Kessloff v. Pearson* (1951) 37 Cal.2d 609, 613.)

"[I]f a plaintiff . . . has other means of seeking a determination of [its] rights, then a trial judge may sustain a general demurrer to a declaratory relief claim." (*C.J.L. Construction, Inc. v. Universal Plumbing* (1993) 18 Cal.App.4th 376, 390 and cases cited therein.)

"[W]hether, under all of the circumstances, a declaration of the rights of the parties is necessary or proper is a matter within the discretion of the trial court, and in the absence of a clear showing of abuse of that discretion, . . . its decision will not be disturbed upon appeal. (Code Civ. Proc. § 1061; [citations].)" (*Lawrence Barker, Inc. v. Briggs* (1952) 39 Cal.2d 654, 669-670.)

8

A court may rely on its discretionary power under section 1061 to sustain a demurrer to a declaratory relief action. (*Simpson v. Security First Nat. Bank* (1945) 71 Cal.App.2d 154, 157-158.)

DISCUSSION

The Diocese insists in its opening brief that the trial court did not sustain the demurrer based on an exercise of discretion under section 1061. Having so insisted, the Diocese does not address in its opening brief whether the trial court abused its discretion under section 1061. Instead, the Diocese contends that the sustaining of the demurrer was improper as a matter of law based on the merits of the dispute.

In its response, the Individual Defendants assert that sustaining the demurrer under section 1061 was not an abuse of discretion. They also note that the Diocese has not argued that it was an abuse of discretion.

In the last few pages of its reply brief, the Diocese, for the first time, contends that sustaining the demurrer was an abuse of discretion under section 1061.

We conclude that (1) the trial court relied on section 1061 in sustaining the demurrer (which means that we apply an abuse of discretion standard on appeal); (2) the Diocese forfeited any claim that the trial court abused its discretion because it makes the argument for the first time in the reply brief; and (3) in any event, the trial court did not abuse its discretion under the circumstances of this case.

I

*The Trial Court Relied on Section 1061*

The Diocese bases the legal argument in its opening brief on its assertion that the trial court did not rely on section 1061 when it sustained the Individual Defendants' demurrer. Since the trial court did not rely on section 1061, argues the Diocese, the proper standard of review is whether the demurrer was improperly sustained as a matter of law on the substantive merits of the action. This premise is false, as the trial court explicitly relied on section 1061.

9

The trial court's order cites section 1061 and states that declaratory relief against the Individual Defendants is not " 'necessary or proper at the time under all the circumstances.' " The Diocese objected in the trial court to this language concerning section 1061 when counsel for the Individual Defendants sought approval of the proposed order, and the trial court effectively overruled the objection by using the proposed language in the order. Despite this clear invocation of the court's discretionary power, the Diocese contends that, because section 1061 was neither briefed nor discussed at the hearing on the demurrer, "[i]t is clear . . . from the order on the demurrer that the trial court did not sustain the demurrer pursuant to an exercise of its discretion under Section 1061 . . . ." The Diocese argues that the trial court actually based its sustaining of the demurrer on the merits of the issues relating to corporate law and possession of the property.

In an attempt to bolster its argument that the court did not rely on section 1061, the Diocese cites *Collins v. City & Co. of S.F.* (1952) 112 Cal.App.2d 719 (*Collins*). In that case, the court held that, before reviewing a case for abuse of discretion under section 1061, the court must have evidence that the trial court acted under section 1061. Since the trial court's ruling sustaining the demurrer went to the merits of the action and did not purport to rely on section 1061, the appellate court refused to consider the section 1061 issue. (*Collins, supra,* at pp. 723-724.)

Unlike the circumstances of *Collins*, the trial court here expressly relied on section 1061 in sustaining the demurrer. In addition to that express reference, the trial court explored at the hearing whether the Individual Defendants' presence in the action was necessary to the relief the Diocese sought. The court asked: "[Counsel], let me ask, though, if the individuals were dismissed from the action, how does that impair your action? You still have your claims against the corporate entity."

We therefore conclude that, contrary to the Diocese's argument, the trial court actually relied on section 1061 in sustaining the demurrer.

## II

### *The Diocese Forfeited an Abuse-of-Discretion Challenge*

As a result of its insistence that the trial court did not rely on its discretionary power under section 1061, the Diocese argues in its opening brief only that sustaining the demurrer was error as a matter of law on the merits of the action and that we must apply a *de novo* standard of review. The opening brief, therefore, does not present a challenge to the trial court's exercise of discretion under section 1061. And because the Diocese does not make this challenge in its opening brief, the challenge is forfeited.

" 'Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument.' [Citation.] 'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.' [Citation.] ' "Obvious considerations of fairness in argument demand that the appellant present all of his points in the opening brief. To withhold a point until the closing brief would deprive the respondent of his opportunity to answer it or require the effort and delay of an additional brief by permission. Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." ' [Citation.]" (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.)

The Diocese offers no good reason for not addressing in its opening brief whether the trial court abused its discretion under section 1061. Therefore, the argument is forfeited.

## III

### *The Trial Court did not Abuse Its Discretion*

In any event, even were we to consider the issue on the merits, we would conclude that the trial court did not abuse its discretion under section 1061.

This is not an action for ejectment or trespass. In fact, the Diocese seeks only a *declaration* that it owns the property and is entitled to control and possess it. The essence

11

of this action is that the Parish Corporation holds the parish property in trust for the benefit of the Diocese and the Church. The complaint does not allege that the Individual Defendants claim any ownership or possessory right beyond the title held by the Parish Corporation. Therefore, we see no reason why declaratory relief against the Individual Defendants is "necessary or proper at the time under all the circumstances."[2] (§ 1061.)

DISPOSITION

The order dismissing the action as to the Individual Defendants is affirmed. The Individual Defendants are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

      NICHOLSON    , Acting P. J.

We concur:

      BUTZ     , J.

      DUARTE    , J.

---

[2] Several of the Individual Defendants are no longer members of the Parish's vestry and board of directors, and these defendants filed a motion in this court to be dismissed from the action. The Diocese opposes this motion because, according to the Diocese, the individuals' position in the Parish is irrelevant. The Diocese maintains that the individuals remain in unlawful possession of the Diocese's property. Given our conclusion that the trial court did not abuse its discretion in dismissing the action as to the Individual Defendants, we deny as moot the motion to dismiss as to several named defendants.