Filed 7/30/19

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

DONALD WILSON et al.,

       Plaintiffs and Appellants,

    v.

COUNTY OF SAN JOAQUIN,

       Defendant and Respondent.

C084895

(Super. Ct. No. STKCVUMM20120013089)

APPEAL from a judgment of the Superior Court of San Joaquin County, Roger Ross, Judge. Reversed.

Law Offices of Johnson and Johnson, Peter Johnson and Jesse Gill for Plaintiffs and Appellants.

HERUM/CRABTREE/SUNTAG and Dana A. Suntag for Defendant and Respondent.

Donald Wilson entered a plea of no contest on a charge of felony child abuse in connection with events culminating in the death on his infant son. He and his wife (plaintiffs) then sued several individuals and entities who undertook to provide lifesaving

1

services for the infant, asserting causes of action for medical malpractice, professional negligence, and intentional infliction of emotional distress.

This appeal involves the trial court's grant of summary adjudication as to one of those causes of action (Second Cause of Action) against one of those defendants, San Joaquin County (the County). This cause of action sought to hold the County responsible for alleged negligence on the part of two firefighters employed by the City of Stockton (the City), who provided emergency medical services to the infant during his transport to San Joaquin General Hospital (the hospital).

The trial court concluded Government Code[1] section 850.6 provided the County with immunity under these circumstances. We conclude this provision, which applies to "fire protection or firefighting" services (§ 850.6, subd. (a)), does not apply to the emergency medical services provided by the firefighters in this case. We must therefore reverse the judgment.

BACKGROUND

*The Infant's Death*

On August 1, 2011, shortly before 10:00 p.m. (21:51), an American Medical Response (AMR) ambulance arrived at plaintiffs' house in Stockton. Inside the house, emergency medical technicians found plaintiffs' infant son in critical condition, with no pulse or heartbeat, not breathing, and unresponsive. They immediately started chest compressions and provided airway and ventilation intervention.

One minute later (21:52), one of the City's Fire Department units also arrived on scene. The infant was loaded into the ambulance and transported to the hospital. Two City firefighters, Brian C. Popoff and Jeff Whitlock, rode with him in the ambulance and

---

[1]     Undesignated statutory references are to the Government Code.

2

performed various emergency medical procedures. Whitlock performed bag-valve mask ventilation using an airway device while one of the AMR paramedics continued chest compressions. The cardiac monitor in the ambulance revealed the infant's heart was in bradycardia, meaning it was beating at less than 60 beats per minute. Popoff performed an intraosseous (within bone) infusion into the infant's lower left leg after being unable to start an intravenous line. Whitlock also intubated the infant and Popoff administered epinephrine for the bradycardia, causing the infant's heart to elevate and peak at 160 beats per minute. The firefighters continued rescue breathing until their arrival at the hospital.

The infant was delivered to the hospital's emergency department at 10:04 p.m. (22:04). After he was determined to no longer be in cardiac arrest, emergency room personnel noticed bruises on his body. Dr. Douglas DeMartinis, M.D., the emergency room physician attending to the infant, ordered CT scans of the infant's head, chest, abdomen, and pelvis. The head scan revealed a subdural hematoma, meaning blood had collected outside the infant's brain. The chest scan revealed pulmonary parenchymal consolidation, meaning a portion of both lungs had filled with fluid. Possible causes included edema, pneumonia, aspiration, hemorrhage, and non-accidental trauma. Because of the latter possibility, law enforcement authorities were called.

About three hours after the infant was brought to the emergency room, he was air lifted to Sutter Medical Center in Sacramento, where he would die 10 days later. The coroner's report lists the cause of death as "[n]on-accidental trauma in a child" and notes the infant "was possibly shaken." The Stockton Police Department investigated the death as a homicide and the San Joaquin District Attorney's Office charged the infant's father, one of the plaintiffs herein, with four felony counts, including child abuse resulting in death. Eventually, in May 2012, the father entered a plea of no contest to felony child abuse.

3

### *The Present Lawsuit and Summary Adjudication*

In October 2012, plaintiffs filed the present lawsuit against several individuals and entities who undertook to provide lifesaving medical services for the infant, asserting causes of action for medical malpractice, professional negligence, and intentional infliction of emotional distress. The operative Third Amended Complaint was filed in March 2014.

As relevant to the issues raised in this appeal, plaintiffs' Second Cause of Action sought to hold the County responsible for medical malpractice and professional negligence allegedly committed by City firefighters Popoff and Whitlock. These firefighters responded to the scene of the emergency pursuant to an agreement between the City and the County authorizing the City's Fire Department to provide emergency medical services as part of the County's Emergency Medical Services system.

The County moved for summary adjudication of this cause of action.[2] Citing section 850.6, the County argued it could not be held responsible for the conduct of City firefighters. We set forth the contents of this section in detail in the discussion portion of the opinion. For present purposes, we note it provides public entities receiving "fire protection or firefighting service" from another public entity with

---

[2]    The motion, filed jointly with Dr. DeMartinis, also sought summary adjudication of plaintiff's Third Cause of Action, suing the County, the hospital, Dr. DeMartinis, and other hospital staff for medical malpractice and professional negligence based on events occurring after the infant arrived at the hospital. Because plaintiffs do not challenge the trial court's ruling as to this cause of action, we decline to set forth that aspect of the summary judgment/adjudication proceedings in any detail. We simply note that following the trial court's grant of summary adjudication as to the Third Cause of Action, plaintiffs requested and the trial court entered dismissal of that cause of action with prejudice.

4

immunity from liability "for any act or omission of the public entity providing the service or for any act or omission of an employee of the public entity providing the service." (§ 850.6, subd. (a).) Plaintiffs opposed the motion, arguing the County is not entitled to immunity under section 850.6 because that section "specifically deals with fire protection or firefighting service" and City firefighters Popoff and Whitlock were providing "emergency medical services unrelated to . . . fire protection and firefighting." In its reply memorandum, the County argued plaintiffs' reading of the statute is "hypertechnical." According to the County's reading of the provision, " '[f]ire protection' services is specific to the things firefighters do to protect the public from fires," and " 'firefighting service' encompasses all the other things firefighters do," including provision of emergency medical services.

The trial court granted the motion, noting plaintiffs had not cited "any authority which would clearly limit the effect of section 850.6 to services directly relating to fighting flames, rather than to a broader category of firefighting services which include the emergency treatment of persons by firefighting personnel." Thereafter, the trial court entered judgment in favor of the County. This appeal followed.

## DISCUSSION

## I

### *The County's Argument the Appeal Should be Dismissed*

The County argues this appeal should be dismissed "because the order from which [plaintiffs] appeal is not an appealable order."[3] We disagree.

---

[3]  In response to this argument, plaintiffs' moved to augment the appellate record with material we determine to be immaterial to the issue raised. We deny the motion to augment for that reason. (See *Bank of America v. Quackenbush* (1997) 56 Cal.App.4th 1167, 1174.)

"The existence of an appealable judgment is a jurisdictional prerequisite to an appeal.  Thus, this court is obligated to review the question of appealability.  [Citations.] [¶] California is governed by the 'one final judgment' rule which provides 'interlocutory or interim orders are not appealable, but are only "reviewable on appeal" from the final judgment.'  [Citation.]  The rule was designed to prevent piecemeal dispositions and costly multiple appeals which burden the courts and impede the judicial process. [Citation.]" (*Jacobs-Zorne v. Superior Court* (1996) 46 Cal.App.4th 1064, 1070 (*Jacobs-Zorne*); see Code Civ. Proc., § 904.1 [generally authorizing appeals from superior court judgments, except those that are interlocutory].)

"It is the substance and effect of the adjudication, and not the form, which determines if the order is interlocutory and nonappealable, or final and appealable. [Citation.]  If no issues in the action remain for further consideration, the decree is final and appealable.  But if further judicial action is required for a final determination of the rights of the parties, the decree is interlocutory.  [Citation.]" (*Jacobs-Zorne*, *supra*, 46 Cal.App.4th at p. 1070.)  "Generally, an order granting summary adjudication is an intermediate order which is 'reviewable on appeal from the *final judgment* in the action.' [Citation.]  However, such an order is appealable if it effectively disposes of the entire matter.  [Citation.]" (*Id*. at pp. 1070-1071.)

For example, in *Belio v. Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, the Court of Appeal held an appeal from "the trial court's order granting summary adjudication as to the first cause of action" was properly before the court because the order " 'effectively disposed of the case.' " (*Id*. at p. 1101, quoting *California Assn. of Psychology Providers v. Rank* (1990) 51 Cal.3d 1, 9.)  This was because the second and third causes of action were "purely ancillary to the first cause of action" that sought dissolution of the defendant corporation.  (*Id*. at p. 1102.)  As the court explained, once the trial court disallowed dissolution of the company, the plaintiff's causes of action

6

seeking an accounting to determine his share of the corporation and an order maintaining the status quo during the pendency of the action became moot. (*Ibid.*) Accordingly, the court explained, " 'there was nothing further in the nature of judicial action on the part of the court essential to a final determination of the asserted rights of the respective parties.' " (*Ibid.*, quoting *Eldridge v. Burns* (1978) 76 Cal.App.3d 396, 405.)

Here, plaintiffs asserted only two causes of action against the County. The trial court granted the County's motion for summary adjudication as to both. As mentioned, following the ruling, plaintiffs requested and the trial court entered dismissal of the Third Cause of Action with prejudice. With respect to the Second Cause of Action, the only remaining cause of action against the County, the trial court entered judgment in favor of the County. The title of this judgment, initially "JUDGMENT ON THIRD AMENDED COMPLAINT AS TO THE COUNTY OF SAN JOAQUIN," was amended by the trial court to strike through "JUDGMENT" and replace that word with "SUMMARY ADJUDICATION." However, it nevertheless operated as a final judgment, ordering as follows:

"The Court, having issued its order on September 30, 2016, granting summary adjudication[4] in favor of the County of San Joaquin (the 'County') and against all Plaintiffs as to Plaintiffs' Second Cause of Action, for medical malpractice/professional negligence, *now issues judgment* as follows:

"IT IS ORDERED, ADJUDGED, AND DECREED that Plaintiffs take nothing by their Third Amended Complaint as to the County and summary adjudication judgment[5]

---

[4]    Again, the word "judgment" was crossed out and "adjudication" written in its place.

[5]    Here, "summary adjudication" was added, but the word "judgment" was left in place.

7

is entered in favor of the County and against Plaintiffs as to the Plaintiffs' Second Cause of Action." (Italics added.)

Notwithstanding the interlineations, "the substance and effect of the adjudication" was to finally resolve the only remaining cause of action pending against the County. As against this defendant, the adjudication "effectively disposes of the entire matter" and is therefore appealable. (*Jacobs-Zorne*, *supra*, 46 Cal.App.4th at pp. 1070-1071.) Nor does it matter that the judgment was entered against only one of several defendants. (See *Tinsley v. Palo Alto Unified School Dist.* (1979) 91 Cal.App.3d 871, 880 [judgment finally resolving all issues between a plaintiff and one defendant is appealable although the action remains pending between the plaintiff and other defendants].)

## II

### *The Merits of the Appeal*

Plaintiffs argue the trial court improperly granted the County's motion for summary adjudication of the Second Cause of Action because the immunity provided by section 850.6 does not apply to the emergency medical services provided by the firefighters in this case. We agree.

### A.

### *Summary Adjudication Principles*

" 'A defendant making the motion for summary adjudication has the initial burden of showing that the cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. [Citations.] If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied. However, if the moving papers establish a prima facie showing that justifies a judgment in the defendant's favor, the burden then shifts to the plaintiff to make a prima facie showing of the existence of a triable material factual issue.' [Citation.] 'A prima facie showing is

8

one that is sufficient to support the position of the party in question.'  [Citation.]"
(*Rehmani v. Superior Court* (2012) 204 Cal.App.4th 945, 950.)

Our review of an order granting summary adjudication is subject to "the same standard of review applicable on appeal from a grant of summary judgment."  (*Schofield v. Superior Court* (2010) 190 Cal.App.4th 154, 156.)  Thus, "[w]e review the record and the determination of the trial court de novo."  (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003.)  Moreover, where the propriety of a grant of summary judgment turns on the proper interpretation of a statute, as here, our review of that question of law is also de novo.  (See *Regents of University of California v. Superior Court* (1999) 20 Cal.4th 509, 531.)

## B.

### *Proper Interpretation of Section 850.6*

"Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law.  In determining such intent, a court must look first to the words of the statute themselves, giving to the language its usual, ordinary import and according significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose.  A construction making some words surplusage is to be avoided.  The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.  [Citations.]  Where uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.  [Citation.]  Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.  [Citations.]"  (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386-1387.)

Section 850.6 provides in relevant part: "Whenever a public entity provides fire protection or firefighting service outside of the area regularly served and protected by the public entity providing that service, the public entity providing the service is liable for any injury for which liability is imposed by statute caused by its act or omission or the act or omission of its employee occurring in the performance of that fire protection or firefighting service.  Notwithstanding any other law, the public entity receiving the fire protection or firefighting service is not liable for any act or omission of the public entity providing the service or for any act or omission of an employee of the public entity providing the service; but the public entity providing the service and the public entity receiving the service may by agreement determine the extent, if any, to which the public entity receiving the service will be required to indemnify the public entity providing the service."  (§ 850.6, subd. (a).)

There is no dispute that the City and the County entered into an agreement whereby the City's Fire Department would provide emergency medical services as part of the County's Emergency Medical Services system.  Under the trial court's reading of section 850.6, the provision of such services fell within the scope of the statutory term "firefighting service," making the City, as "the public entity providing the service," liable for "any injury for which liability is imposed by statute caused by . . . the act or omission of its employee[s] occurring in the performance of that . . . firefighting service," and immunizing the County, as "the public entity receiving the . . . firefighting service," from such liability.  (§ 850.6, subd. (a).)  As we explain immediately below, this is incorrect.

Section 850.6 was enacted in 1963 as part of the California Tort Claims Act (§ 810 et seq.), an act adding division 3.6 to title 1 of the Government Code.  (Stats. 1963, ch. 1681, p. 3266.)  The section was added to chapter 4 of part 2 of this division.  This chapter is titled, "Fire Protection."  (Stats. 1963, ch. 1681, p. 3279.)  While there do not

10

appear to be any published cases interpreting section 850.6, the Law Revision Commission provided the following comment with respect to its purpose and scope: "This section makes clear which public entity is liable when one entity calls for the assistance of another *in fighting a fire*.  Unless the entities agree, each entity is financially responsible only for the torts of its own personnel."  (4 Cal. Law Revision Com. Rep. (1963) p. 801, reprinted in West's Ann. Gov. Code (2012 ed.) foll. § 850.6, italics added.) While this comment is perhaps too restrictive in that the statute applies to both "firefighting" and "fire protection" services, the latter term arguably encompassing actions broader than those undertaken during the actual fighting of a fire, the comment corresponds precisely with the plain meaning of the statutory phrase, "firefighting service."  By "firefighting service," the Legislature intended to include all services attendant to "fighting a fire." (*Ibid*.)  "Because the official comments of the California Law Revision Commission 'are declarative of the intent not only of the draftsman of the code but also of the legislators who subsequently enacted it' [citation], the comments are persuasive, albeit not conclusive, evidence of that intent [citation]." (*Bonanno v. Central Contra Costa Transit Authority* (2003) 30 Cal.4th 139, 148.)

The County has cited no authority suggesting the Legislature intended the phrase "firefighting service" in section 850.6 to include emergency medical services unrelated to fighting a fire.  However, cases interpreting a related provision, section 850.4, support our conclusion the emergency medical services rendered in this case are not part of "firefighting service" within the meaning of the statute.

In *Lewis v. Mendocino Fire Protection Dist.* (1983) 142 Cal.App.3d 345 (*Lewis*), the Court of Appeal held, "section 850.4 does not grant immunity to a fire district when its personnel negligently injure a person rescued during a nonfirefighting incident." (*Id*. at p. 346.)  There, the plaintiff alleged he was injured by the actions of firefighters who negligently rescued him from beneath a tree that had fallen onto his

11

tent while camping. The trial court sustained the defendant fire protection district's demurrer on the ground that section 850.4 provided the district with immunity under these circumstances. (*Id*. at pp. 346-347.) The section provides: "Neither a public entity, nor a public employee acting in the scope of his [or her] employment, is liable for any injury resulting from the condition of fire protection or firefighting equipment or facilities or, except as provided in [certain Vehicle Code provisions], for any injury caused in fighting fires." (§ 850.4.)

Reversing the trial court's decision, the Court of Appeal first noted it was required to interpret section 850.4 to allow for liability unless "the Legislature has clearly intended immunity." (*Lewis*, *supra*, 142 Cal.App.3d at p. 347.) With respect to legislative intent, the court cited the Law Revision Commission's comment to section 850.6, indicating it provided " 'absolute immunity from liability for injury caused in *fighting fires* (other than injuries resulting from operation of motor vehicles) or from failure to properly maintain fire protection equipment or facilities.' " (*Ibid*.) The court concluded: "Although this rescue operation may be within the normal activities of today's fire department, it was unrelated to combatting fires and therefore is beyond the grant of governmental immunity." (*Ibid*.; see also *Varshock v. Department of Forestry & Fire Protection* (2011) 194 Cal.App.4th 635, 649 ["Legislature intended to immunize the conduct of firefighters *while at the scene of a fire and actually combating a fire*"].)

In response to *Lewis, supra,* 132 Cal.App.3d 345, the Legislature enacted Health and Safety Code section 1799.107. (*Ma v. City and County of San Francisco* (2002) 95 Cal.App.4th 488, 513, disapproved on another point in *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183-1184.) Subdivision (a) of this provision states: "The Legislature finds and declares that a threat to the public health and safety exists whenever there is a need for emergency services and that public entities and emergency rescue personnel should be encouraged to provide emergency services. To

12

that end, *a qualified immunity* from liability shall be provided for public entities and emergency rescue personnel providing emergency services." (Health & Saf. Code, § 1799.107, subd. (a), italics added.) Subdivision (b) then provides in relevant part: "[N]either a public entity nor emergency rescue personnel shall be liable for any injury caused by an action taken by the emergency rescue personnel acting within the scope of their employment to provide emergency services, *unless the action taken was performed in bad faith or in a grossly negligent manner.*" (*Id.*, subd. (b), italics added.)

"[Health and Safety Code s]ection 1799.107, subdivision (d), defines 'emergency rescue personnel' to mean 'any person who is an officer, employee, or member of a fire department or fire protection or firefighting agency of the federal government, the State of California, a city, county, city and county, district, or other public or municipal corporation or political subdivision of this state, or of a private fire department, whether that person is a volunteer or partly paid or fully paid, while he or she is actually engaged in providing emergency services as defined by subdivision (e).' [¶] Finally, subdivision (e) of [Health and Safety Code] section 1799.107 provides that 'emergency services' includes 'first aid and medical services, rescue procedures and transportation, *or other related activities* necessary to insure the health or safety of a person in imminent peril.' " (*Eastburn v. Regional Fire Protection Authority*, *supra*, 31 Cal.4th at pp. 1180-1181.)

Thus, the Legislature has provided two levels of governmental immunity for injuries resulting from the negligent conduct of firefighters. Where such conduct is part of their firefighting activities, with limited exceptions, an absolute immunity applies. (§ 850.4.) Where, however, the negligent conduct is part of providing emergency services, such as the emergency medical services at issue in this case, a qualified immunity applies, requiring bad faith or gross negligence to trigger liability. (Health & Saf. Code, § 1799.107.)

13

The County does not dispute this, but argues the foregoing cases are inapposite because they involved section 850.4 rather than section 850.6. Moreover, section 850.4 uses the statutory phrase, "in fighting fires," whereas section 850.6 uses "firefighting service," a phrase the County argues should be interpreted to mean "all the regular services a firefighter renders," including emergency medical services. However, as we have explained, the Law Revision Commission has made clear in its comment to section 850.6 that "firefighting service" means service attendant to "fighting a fire." (4 Cal. Law Revision Com. Rep. (1963) p. 801, reprinted in West's Ann. Gov. Code (2012 ed.) foll. § 850.6.) This comports with the plain meaning of the statutory language. Additionally, while section 850.4 and section 850.6 provide different immunities, the former shielding both the firefighter and the entity employing him or her from liability for injuries caused by negligent conduct while fighting a fire (among other things, and again with limited exceptions), while the latter shields an entity receiving such firefighting services (as well as fire protection services) from an outside entity, we conclude the placement of these provisions in the same "Fire Protection" chapter suggests an intent on the part of the Legislature that they be interpreted similarly to exclude conduct unrelated to protecting the public from and fighting fires.

Finally, we are not unsympathetic to the County's argument that it makes sense "to impose liability on the public entity that provides the firefighters, whether the firefighters were actually spraying water on a flame at the time the injury occurred or not." But we cannot interpret a statutory enactment in such a way as to expand a grant of immunity beyond what the plain meaning of the statute and expression of Legislative intent would reasonably allow. As the court stated in *Lewis*, *supra*, 142 Cal.App.3d 345: "In governmental tort cases, the rule is liability; immunity is the exception." (*Id*. at p. 347.) Should the Legislature desire to create an immunity complementary to that provided by section 850.6 for emergency services unrelated to fire protection or

14

firefighting, as it did in enacting Health and Safety Code section 1799.107 following *Lewis, supra,* 142 Cal.App.3d 345, it is of course free to do so.

DISPOSITION

The judgment entered following the trial court's grant of San Joaquin County's motion for summary judgment and/or summary adjudication is reversed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278.)


            /s/
          HOCH, J.



We concur:


        /s/
BLEASE, Acting P. J.


        /s/
MAURO, J.


15